198 P.3d 1065 (2009)
STATE of Washington, Respondent,
v.
Isidro Sanchez VALENCIA, aka Isaias Vernal, aka Eugencio Gonzales Sanchez, aka Isaias Vernal-Valencial, aka Gonzales Eugencio Sanchez, aka Isidro Valencia Sanchez, Appellant.
State of Washington, Respondent,
v.
Eduardo Chavez Sanchez, Appellant.
Nos. 36029-2-II, 36115-9-II.
Court of Appeals of Washington, Division 2.
January 13, 2009.
*1067 Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.
John A. Hays, Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
QUINN-BRINTNALL, J.
¶ 1 A jury convicted Isidro Sanchez Valencia and Eduardo Chavez Sanchez of possession of a controlled substance with intent to deliver  marijuana and conspiracy to commit possession of a controlled substance with intent to deliver  marijuana. Sanchez Valencia and Sanchez appeal, claiming that there was insufficient evidence to support their convictions. They also assert that the trial court erred by imposing a community custody condition prohibiting them from possessing drug paraphernalia because, they claim, the community custody condition is unconstitutionally vague. Because the evidence was sufficient to support their convictions and the challenge to the community custody condition is premature, we affirm.

FACTS

Background Facts
¶ 2 In August of 2006, detectives from the Cowlitz County Drug Task Force contacted Detective Bryan Acee of the Vancouver Police *1068 Department and asked him to begin surveillance on Jesus Gonzalez-Perez, a suspected drug trafficker. Acee began surveilling on a residence located at 2612 Grand Boulevard, No. B, in Vancouver, Washington, an address associated with Gonzalez-Perez. In the course of his investigation and surveillance on the Grand Boulevard address, Acee reported observing frequent foot and vehicle traffic coming to and from the residence, with visits usually lasting only a few minutes and on a number of occasions seeing hand-to-hand transactions occurring near the doorway.
¶ 3 Between August 27 and August 30, 2006, Detective Acee observed the occupants at the Grand Boulevard address move boxes and furniture to 806 S.E. 141st Avenue, another residential address in Vancouver, Washington. Acee and other officers continued surveillance at the 141st Avenue address through September and into October of 2006. On September 19, Acee observed an unknown male arrive at the 141st Avenue residence, talk briefly with someone at the doorway, engage in a hand-to-hand transaction, and leave with a small shoebox. On October 2, Acee observed seven different subjects arrive at the residence, again with visits lasting only a few minutes, with hand-to-hand transactions at the doorway, including what appeared to be an exchange of currency. Six of the seven visitors on October 2 left with either a shoebox or a black garbage bag.
¶ 4 On October 18, Detective Acee obtained a search warrant authorizing a search of the 141st Avenue house for items related to drug trafficking, as well as the persons of Gonzalez-Perez, Renee Turner, and Audel Arregan-Cardenas. On the morning of October 21, Acee and other officers continued surveillance on the residence with a plan to execute the search warrant later that evening.
¶ 5 On October 21, Detective Acee observed a number of people drive up to the house, enter, and then leave carrying one or two black garbage bags. The garbage bags appeared to be a quarter to a third full and contain something light. A number of officers followed the vehicles that left the residence that day and observed the drivers engage in "counter-surveillance" techniques.[1]
¶ 6 One of the people arriving at the 141 st Avenue house that day was Sanchez, who left the residence carrying two black garbage bags that he placed in the trunk of his vehicle. This was the first time officers had seen Sanchez at this residence. Detective Acee attempted to follow Sanchez's vehicle, but lost him and returned to the residence to resume surveillance.
¶ 7 Another person leaving the residence with a black garbage bag that day was Mark Turner. Officer Troy Rawlins stopped Mark Turner's vehicle within a few blocks of the residence. Rawlins found a backpack tucked behind the driver's seat of Mark Turner's car. The backpack contained a black garbage bag with what appeared to be marijuana inside it. Officers later weighed and tested the contents of the black garbage bag, confirming it to be three pounds of marijuana.
¶ 8 Officers also saw Sanchez Valencia at the residence earlier that morning repairing a mailbox. Before October 21, officers had not seen Sanchez Valencia at this residence during any of their surveillance. Later that day, officers saw Sanchez Valencia leave the residence carrying a black garbage bag. He placed the bag in his vehicle and then left with a young boy. Officer Josannah Hopkins followed Sanchez Valencia's vehicle but lost sight of him. Hopkins did not observe Sanchez Valencia use any "counter-surveillance" techniques while driving away from the residence.
¶ 9 Later that same afternoon, Detective Acee called the officers who were surveilling various locations so they could help him execute the search warrant. When they entered the house, the officers were overwhelmed with the odor of fresh marijuana. But there was no one at the residence. Officers discovered 68 one-pound clear plastic bags of marijuana on the floor of a bedroom closet, as *1069 well as a digital scale. They also found a receipt in the pocket of a shirt which indicated that Sanchez had wired $2,000 to Mexico earlier that month. Officers also discovered a large shopping bag containing approximately $126,000 in the closet of a second bedroom and a loaded handgun in a third bedroom. Finally, officers found various items throughout the house and in a backyard shed, such as prepaid cellular phones, walkie-talkies, a box of black garbage bags, scales, two one-pound packaged bags of marijuana, a Vancouver motel receipt in the name of Sanchez, and a "shake net."[2]
¶ 10 After searching the house, officers moved all the police cars and returned to the residence to await people returning. Renee Turner and Alberto Valencia-Rojos arrived at the house with an infant in the back seat. Officers detained Renee Turner and Valencia-Rojos, searched their vehicle, and discovered a loaded handgun in the glove box, two-way radios in the back seat, and paperwork addressed to Sanchez in the vehicle's center console. Officers also detected a strong odor of marijuana, but they did not find any marijuana nor did they find the black garbage bags they had seen the suspects placing in the vehicle earlier that day.
¶ 11 Sanchez Valencia was the next to arrive at the house, driving the same vehicle he left with earlier that day. Officers searched this vehicle but, once again, they did not discover any marijuana nor did they discover the black bag he had placed in the vehicle, although they did detect the scent of marijuana behind the driver's seat. When later interviewed, Sanchez Valencia told Detective Shane Gardner that his name was Eugenio Gonzalez Sanchez. As the evening progressed, two other vehicles arrived at the residence. Officers similarly searched the vehicles, detected a strong odor of marijuana, but failed to find any marijuana other than some loose particles in the trunk of one of the vehicles.
¶ 12 Sanchez was the last to arrive at the residence. Again, officers detected the scent of marijuana in his vehicle, but they did not find any marijuana. They searched Sanchez's person and found approximately $8,500 in cash wrapped in a rubber band in the pocket of his jeans.

Procedural Facts
¶ 13 On October 26, 2006, Clark County charged eight different individuals, including Sanchez and Sanchez Valencia, with possession of marijuana with intent to deliver and conspiracy to possess marijuana with intent to deliver. The possession of marijuana with intent to deliver charge included an enhancement because the offense occurred within 1,000 feet of a school bus stop. The case was tried to a jury with Sanchez and Sanchez Valencia as co-defendants.
¶ 14 At the trial, Detective Acee testified that, in his years of experience investigating drug distribution rings, he recognized the activities occurring around the two residences in Vancouver, Washington, as evidence of a sophisticated drug distribution operation. Acee also testified that he recognized the residences as being "safe houses," places where marijuana is delivered from growers and is packaged for sale by distributors. Acee further testified that, in his experience, he recognized Renee Turner as a "facilitator," a person with a clean record who can register vehicles, utilities, and phone records in her name so that law enforcement will not suspect illegal activities at the safe house. Acee also testified that large drug operations often utilized an organizational hierarchy similar to legitimate businesses. Acee recognized Gonzalez-Perez as a "broker," one who represents a geographical region and is responsible for hiring "managers" who are responsible for the money collection and often carry guns. At the bottom of the hierarchy are "runners" or "couriers" who simply take the product from the safe house and deliver it to neighborhood drug houses. Acee also testified about how drug distribution operations use communication devices such as prepaid cellular phones and walkie-talkies, stating:
In my experience, [prepaid cellular phones and walkie-talkies] are used as a communication *1070  a secure communication device between people. I have seen, in  in terms of drug trafficking, where the person's driving the load vehicle, or the vehicle that's loaded with narcotics, can call ahead and check in with scouts that are put out on the road ahead of time to look for police roadblocks or police canine units, or just police cruisers in general; and they're also used to communicate to the driver of the load vehicle that it is safe, now, to come into the safe house and unload.
2 RP at 195.
¶ 15 The jury found both Sanchez and Sanchez Valencia guilty of possession of marijuana with intent to deliver and conspiracy to possess marijuana with intent to deliver and entered a special verdict finding that the offense was committed within 1,000 feet of a school bus stop.
¶ 16 At sentencing, the trial court determined that both the possession of marijuana with intent to deliver charge and the conspiracy charge were the same criminal conduct under RCW 9.94A.589. The trial court then sentenced both Sanchez and Sanchez Valencia to standard range sentences of 6 months, adding 24 months for the school bus stop enhancement, and a term of 9 to 12 months community custody. The community custody conditions imposed included the following:
Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, police scanners, and hand held electronic scheduling and data storage devices.
Clerk's Papers (CP) (Sanchez) at 112; CP (Sanchez Valencia) at 106.
¶ 17 After sentencing, Sanchez and Sanchez Valencia filed timely notices of appeal.
¶ 18 On June 14, 2007, Sanchez was returned to Clark County to correct an error in calculating the application of the school bus enhancement to his standard range sentence. The trial court entered an amended judgment and sentence that increased Sanchez's total term of confinement to 36 months.[3] The trial court similarly amended Sanchez Valencia's sentence.

ANALYSIS

Sufficiency of the Evidence
¶ 19 Sanchez and Sanchez Valencia argue that we should reverse their convictions for possession of marijuana with intent to deliver and conspiracy to possess marijuana with intent to deliver for insufficient evidence.[4] We disagree.
¶ 20 Sufficiency of the evidence is a question of constitutional magnitude and can be raised for the first time on appeal. State v. Alvarez, 128 Wash.2d 1, 13, 904 P.2d 754 (1995). In determining whether sufficient evidence supports a conviction, "[t]he standard of review is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." State v. Rempel, 114 Wash.2d 77, 82, 785 P.2d 1134 (1990) (citing State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)). Furthermore, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt *1071 but only that substantial evidence supports the State's case. State v. Fiser, 99 Wash. App. 714, 718, 995 P.2d 107, review denied, 141 Wash.2d 1023, 10 P.3d 1074 (2000).
¶ 21 A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn therefrom. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable for purposes of drawing inferences. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. State v. Hernandez, 85 Wash.App. 672, 675, 935 P.2d 623 (1997) (citing State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533, review denied, 119 Wash.2d 1011, 833 P.2d 386 (1992)). In other words, credibility determinations are for the trier of fact and are not subject to review. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).

A. Possession of a Controlled Substance with Intent to Deliver
¶ 22 To convict Sanchez Valencia and Sanchez of possession of a controlled substance with intent to deliver, the State had to prove that they (1) unlawfully possessed (2) a controlled substance (3) with intent to deliver. RCW 69.50.401; State v. Hagler, 74 Wash.App. 232, 235, 872 P.2d 85 (1994).
¶ 23 Viewing the evidence in a light most favorable to the State, the record contains ample evidence to support the jury's verdict finding both appellants guilty of unlawful possession of a controlled substance with intent to deliver. Here, the State proved that both appellants left a drug house that contained over 68 pounds of marijuana, $126,000 in cash, and many other items used in a major marijuana distribution operation, such as scales, cellular phones, packaging materials, and a loaded firearm. Each appellant left the house with one or two black garbage bags that appeared to contain something light. From the pattern of conduct engaged in by others leaving the residence that day with similar black garbage bags that included drivers using counter-surveillance techniques and one such driver found to have three pounds of marijuana in the black garbage bag contained within his vehicle, any rational trier of fact could infer that the black garbage bags Sanchez and Sanchez Valencia were seen carrying contained marijuana. In addition, Detective Acee testified that he smelled fresh marijuana in both appellants' cars.
¶ 24 The State also presented sufficient evidence from which a rational jury could infer that Sanchez and Sanchez Valencia intended to deliver the marijuana to others. While "`bare possession ... absent other facts and circumstances'" is not enough for a trier of fact to infer an intent to deliver, there are additional factors present here. State v. Brown, 68 Wash.App. 480, 483, 843 P.2d 1098 (1993) (quoting State v. Harris, 14 Wash.App. 414, 418, 542 P.2d 122 (1975), review denied, 86 Wash.2d 1010 (1976)). In addition to the large amount of marijuana and cash contained within the residence, police also found weapons, communication devices, scales, and packaging materials. Police officers also discovered that Sanchez was carrying a large sum of cash. Having a substantial amount of cash is also an additional factor indicating an intent to deliver. State v. Campos, 100 Wash.App. 218, 224, 998 P.2d 893 (defendant possessed $1,750 cash), review denied, 142 Wash.2d 1006, 34 P.3d 1232 (2000); Hagler, 74 Wash.App. at 233, 236, 872 P.2d 85 (defendant possessed $342 cash).
¶ 25 Sanchez and Sanchez Valencia contend that, because officers did not discover any marijuana on their persons or within their vehicles, their activities may be consistent with innocent behavior. But circumstantial evidence and direct evidence are equally reliable for purposes of drawing inferences. Delmarter, 94 Wash.2d at 638, 618 P.2d 99. Furthermore, it is not necessary that circumstantial evidence exclude "every reasonable hypothesis consistent with the accused's innocence.... It is only necessary that the trier of fact is convinced beyond a reasonable doubt that the defendant is guilty." State v. Isom, 18 Wash.App. 62, 66, 567 P.2d 246 (1977) (citing State v. Gosby, 85 Wash.2d 758, 539 P.2d 680 (1975)). From *1072 the evidence presented here, any rational trier of fact could find that the appellants possessed marijuana with an intent to deliver.

B. Conspiracy
¶ 26 Likewise, there was sufficient evidence for a jury to convict Sanchez and Sanchez Valencia of conspiracy to commit possession of a controlled substance with intent to deliver.
¶ 27 To convict Sanchez and Sanchez Valencia of conspiracy to commit possession of a controlled substance with intent to deliver, the State had to prove that (1) the appellants agreed with one or more persons to engage in or cause the performance of conduct constituting the crime of possession of a controlled substance with intent to deliver, (2) the appellants made the agreement with the intent that such conduct be performed, and (3) any one of the persons involved in the agreement took a substantial step in pursuance of the agreement. RCW 9A.28.040.
¶ 28 At trial, Detective Acee testified that, as a result of his years of experience investigating drug distribution organizations, he recognized the residence from which both appellants departed with garbage bags as being a "safe house," a place where marijuana is delivered from growers and is packaged for sale. Acee further testified that, in his experience, he recognized Renee Turner as a "facilitator," a person with a clean record who can register vehicles, utilities, and phone records in her name so that law enforcement will not suspect illegal activities at the safe house. Finally, Acee testified that large-scale drug operations often use an organizational hierarchy similar to that of legitimate businesses, with brokers and managers at the top and runners or couriers at the bottom entry level jobs.
¶ 29 Credibility determinations are for the trier of fact and are not subject to review. Camarillo, 115 Wash.2d at 71, 794 P.2d 850. And, here, any jury could have found Detective Acee's testimony credible and could properly infer that, by leaving the house with black garbage bags, Sanchez and Sanchez Valencia agreed and knowingly participated in a drug distribution enterprise, intended such criminal conduct to occur, and that a substantial step was taken in furtherance of that criminal enterprise.

Community Custody Conditions
¶ 30 On appeal, Sanchez and Sanchez Valencia again challenge their sentences, this time arguing that the community custody condition forbidding possession or use of drug paraphernalia is unconstitutionally vague. But this challenge is premature and not ripe for review.
¶ 31 The community custody provision at issue states:
Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, police scanners, and hand held electronic scheduling and data storage devices.
CP (Sanchez) at 112; CP (Sanchez Valencia) at 106.
¶ 32 Appellants acknowledge our recent decision in State v. Motter, 139 Wash.App. 797, 162 P.3d 1190 (2007), review denied, 163 Wash.2d 1025, 185 P.3d 1194 (2008), in which we held that challenges to conditions of community custody such as these were not ripe for review. But they nonetheless argue that a refusal to address their challenge violates their due process rights and their right to effective appellate review. We disagree.

A. Ripeness
¶ 33 Sanchez and Sanchez Valencia's challenge to their community custody condition is not ripe for review. See Motter, 139 Wash.App. at 804, 162 P.3d 1190. The State is correct that the community custody provision at issue is identical to the provision in Motter and, therefore, Motter controls. 139 Wash.App. at 803-04, 162 P.3d 1190. In Motter, we held that the defendant's challenge to his community custody provision prohibiting possession of drug paraphernalia was not ripe for review. 139 Wash.App. at 804, 162 P.3d 1190. We explained that the defendant had "not been harmed by this *1073 potential for error and this issue therefore is not ripe for our review." Motter, 139 Wash. App. at 804, 162 P.3d 1190. Sanchez and Sanchez Valencia have likewise not shown that the community custody provision has harmfully affected either of them. See State v. Massey, 81 Wash.App. 198, 200, 913 P.2d 424 (1996) (the unconstitutionality of a law is not ripe for review unless the person is harmfully affected by the part of the law alleged to be unconstitutional). Accordingly, Sanchez and Sanchez Valencia's challenge is premature and it is not properly before us.
¶ 34 Sanchez and Sanchez Valencia urge us to overrule Motter to the extent that the Motter court refused to decide a challenge to a community custody condition for lack of ripeness. Sanchez and Sanchez Valencia argue that, by refusing to address their claim, we deny their right to procedural due process under article I, section 3 of the Washington Constitution and the Fourteenth Amendment of the United States Constitution, as well as their right to appellate review as guaranteed by article I, section 22 of the Washington Constitution.
¶ 35 The appellants' argument rests on their contention that they have no access to judicial review after this appeal. They contend that under WAC 137-104-050, a Department of Corrections hearing officer, not a judge, will determine whether they have violated a condition of community custody. They further argue that the administrative procedures contained in the relevant sections of chapter 137-104 WAC deny them the right to appeal the constitutionality of the community custody conditions imposed by the trial court. We disagree.
¶ 36 Sanchez and Sanchez Valencia do have an avenue for appellate review of the enforcement and constitutionality of a community custody condition. A defendant who is found to have violated a community custody condition may obtain review of the appellate courts through a personal restraint petition. See RAP 16.4(c)(6); In re Pers. Restraint of Cashaw, 123 Wash.2d 138, 148, 866 P.2d 8 (1994).
¶ 37 Shortly after oral argument in this case, our Supreme Court issued its opinion in State v. Bahl, 164 Wash.2d 739, 193 P.3d 678 (2008), holding a preenforcement challenge to a community custody condition prohibiting the possession of pornographic material ripe for review.[5] Our Supreme Court found Bahl's preenforcement challenge ripe because a prohibition on possessing pornography implicates First Amendment rights and, thus, dealt with a purely legal issue that courts could solve on the present record without the need for additional facts to aid the court's inquiry. Bahl, 164 Wash.2d at 752-53, 193 P.3d 678. The Bahl court noted that Bahl raised a facial challenge to the validity of his community custody conditions and that "many courts have addressed, as legal questions, vagueness challenges to terms the same as, or comparable to, the terms in the conditions to which Bahl is subject." 164 Wash.2d at 752, 193 P.3d 678. But the Bahl court did not suggest that courts abandon the ripeness doctrine in this context altogether stating, "ripeness is an appropriate doctrine to apply when deciding whether a preenforcement vagueness claim is premature ... [and][a]pplying the ripeness doctrine can help identify the cases where a more developed factual record is necessary before a decision on the constitutionality of sentencing conditions can be made." 164 Wash.2d at 749, 193 P.3d 678.
¶ 38 Bahl suggests a test for reviewing courts to determine whether a challenge is sufficiently mature. First, a claim is fit for judicial determination when (1) the issues raised are primarily legal, (2) the issues do not require further factual development, and (3) the challenged action is final. Bahl, 164 Wash.2d at 751, 193 P.3d 678. Second, the reviewing court must also consider *1074 "`the hardship to the parties of withholding court consideration.'" Bahl, 164 Wash.2d at 751, 193 P.3d 678 (quoting First United Methodist Church of Seattle v. Hearing Exam'r for Seattle Landmarks Pres. Bd., 129 Wash.2d 238, 255-56, 916 P.2d 374 (1996) (Dolliver, J. dissenting)). Sanchez and Sanchez Valencia's challenge does not satisfy the Bahl ripeness test.
¶ 39 First, unlike the condition prohibiting the possession of pornography addressed in Bahl, Sanchez and Sanchez Valencia do not argue that their community custody conditions implicate any First Amendment rights. And vagueness challenges which do not involve First Amendment rights must be evaluated in light of the particular facts of each case, rather than for facial invalidity, a purely legal analysis. City of Spokane v. Douglass, 115 Wash.2d 171, 182, 795 P.2d 693 (1990). Therefore, a determination of whether the condition is unconstitutionally vague as applied to Sanchez or Sanchez Valencia is premature until the condition actually causes them harm based on the specific facts alleged to violate the condition. Accordingly, Sanchez and Sanchez Valencia's challenge to the drug paraphernalia prohibition fails to satisfy the first prong of the Bahl test.
¶ 40 Second, Sanchez and Sanchez Valencia's community custody conditions prohibit them from possessing drug paraphernalia. And, unlike pornography, a court's determination of whether Sanchez or Sanchez Valencia have been provided sufficient warning of what items they are prohibited from possessing necessarily rests on a factual record demonstrating the manner in which they used or possessed the item alleged to violate the prohibition. For example, a soda pop can used for its intended purpose is not drug paraphernalia. But when that same soda pop can is modified for use as a pipe to ingest illegal drugs, it becomes drug paraphernalia. Thus, whether Sanchez and Sanchez Valencia's community custody condition prohibits them from possessing an item such as a can of soda pop depends on how they modify it for a different use or intend to use the item. And a reviewing court cannot make that determination without context. Because a more developed factual record is necessary to resolve Sanchez and Sanchez Valencia's vagueness challenge, they fail to satisfy the second prong of the Bahl issue maturity test.
¶ 41 Finally, because an innocent object does not transform itself into drug paraphernalia absent an intention to use it to ingest illegal drugs, withholding review of the constitutionality of the conditions at issue does not cause Sanchez and Sanchez Valencia significant hardship. In contrast, requiring that the trial court anticipate all future unlawful modifications or potential illegal uses of otherwise innocuous items before lawfully conditioning a convicted drug offender's release on avoiding such unlawful conduct poses a significant and likely insurmountable hardship. We agree, as the dissent suggests, that citation to statutes and infractions defining drug paraphernalia like RCW 69.50.102 and RCW 69.50.4121(1)(a)-(m) can assist in defining the phrase. We note, however, that, because these statutory lists are not exclusive, Sanchez and Sanchez Valencia's vagueness challenge remains. Their arguments demand an exhaustive and exclusive list of prohibited items the law does not require. Because it is not possible for the sentencing court to anticipate unlawful modifications and uses of otherwise lawful innocuous items, the validity of an alleged violation is necessarily fact-based. Sanchez and Sanchez Valencia's challenge is premature and not ripe for review.
¶ 42 Bahl does not disturb the second limitation to vagueness challenges of community custody conditions: that "impossible standards of specificity are not required since language always involves some degree of vagueness." 164 Wash.2d at 759,193 P.3d 678 (internal quotation marks omitted). And a community custody condition "is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." City of Seattle v. Eze, 111 Wash.2d 22, 27, 759 P.2d 366 (1988). While a greater degree of specificity is required when a community custody condition implicates First Amendment rights, such as a prohibition on possessing pornography, there is no corresponding First Amendment right to possess drug paraphernalia. *1075 Bahl, 164 Wash.2d at 757-58, 193 P.3d 678; see City of Tacoma v. Luvene, 118 Wash.2d 826, 842-44, 827 P.2d 1374 (1992) (city ordinance prohibiting soliciting, enticing, inducing, or procuring another to exchange, buy, sell, or use drug paraphernalia did not reach into arena of constitutionally protected First Amendment conduct).
¶ 43 In Motter, we reasoned that "[i]t is not reasonable to require a trial court to list every item that may possibly be misused to ingest or process controlled substances." 139 Wash.App. at 804, 162 P.3d 1190. Following Motter, we hold that the trial court is not required to list every drug paraphernalia item Sanchez and Sanchez Valencia are prohibited from possessing. The condition is sufficiently specific to notify Sanchez and Sanchez Valencia that they shall not use or possess drug paraphernalia. The fact that many legitimate items may be used to ingest or sell drugs does not make this condition unconstitutionally vague, because an item is not drug paraphernalia if possessed for its intended lawful use. This is particularly true when the condition lists several common items that Sanchez and Sanchez Valencia are prohibited from possessing.
¶ 44 Sanchez and Sanchez Valencia have failed to meet their burden of proving that the community custody condition is unconstitutionally vague beyond a reasonable doubt. Accordingly, the sentencing court did not abuse its discretion when it imposed a community custody condition prohibiting Sanchez and Sanchez Valencia from possessing or using drug paraphernalia.

B. Merits
¶ 45 Moreover, even if Sanchez and Sanchez Valencia's challenge to their community custody was ripe for review, on the present record the claim fails on the merits. Sanchez and Sanchez Valencia contend that the community custody provision prohibiting their possession of drug paraphernalia is unconstitutionally vague.
¶ 46 RCW 9.94A.700(5)(e) authorizes the sentencing court to order defendants to "comply with any crime-related prohibitions." Forbidding a defendant from possessing drug paraphernalia, where the conviction was related to drugs or substance abuse, "is a `crime-related prohibition[ ]' authorized under RCW 9.94A.700(5)(e)." Motter, 139 Wash.App. at 804, 162 P.3d 1190.
¶ 47 A community custody provision may be void for vagueness if it fails to define specifically the activity that it prohibits. Motter, 139 Wash.App. at 804, 162 P.3d 1190. Prior to our Supreme Court's decision in Bahl, the vagueness doctrine as applied to community custody conditions was limited in two significant ways. Eze, 111 Wash.2d at 26, 759 P.2d 366; State v. Sansone, 127 Wash.App. 630, 639, 111 P.3d 1251 (2005). First, courts presumed a community custody provision to be constitutional unless its unconstitutionality appeared beyond a reasonable doubt. See State v. Riles, 135 Wash.2d 326, 347-48, 957 P.2d 655 (1998) (In vagueness challenge to community custody conditions imposed in the sentencing courts discretion, "[t]he party challenging the prohibition has the burden of overcoming the presumption of constitutionality."); Sansone, 127 Wash.App. at 639, 111 P.3d 1251. "Second, impossible standards of specificity are not required." Eze, 111 Wash.2d at 26, 759 P.2d 366; Riles, 135 Wash.2d at 348, 957 P.2d 655; Sansone, 127 Wash.App. at 639, 111 P.3d 1251. Bahl places the first limitation into doubt, stating:
While many courts apply to sentencing conditions the same vagueness doctrine that applies with respect to statutes and ordinances, there is one distinction. In the case of statutes and ordinances, the challenger bears a heavy burden of establishing that the law is unconstitutional. This burden exists because of the presumption of constitutionality afforded legislative enactments. A sentencing condition is not a law enacted by the legislature, however, and does not have the same presumption of validity. Instead, imposing conditions of community custody is within the discretion of the sentencing court and will be reversed if manifestly unreasonable. State v. Riley, 121 Wash.2d 22, 37, 846 P.2d 1365 (1993). Imposition of an unconstitutional *1076 condition would, of course, be manifestly unreasonable.
164 Wash.2d at 753, 193 P.3d 678.
¶ 48 Ignoring Riles, Bahl baldly states that sentencing conditions do not carry the same presumption of validity afforded to legislative enactments. Where First Amendment rights are not implicated, we see no reason not to apply to sentencing conditions the same presumption of validity applied to administrative regulations, which are also not laws passed by the legislature. St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wash.2d 690, 702, 801 P.2d 212 (1990); Ravsten v. Dep't of Labor & Indus., 108 Wash.2d 143, 154, 736 P.2d 265 (1987). And a party raising a vagueness challenge bears the burden of proving an administrative regulation unconstitutional beyond a reasonable doubt. Wash. Cedar & Supply Co., Inc. v. Dep't of Labor & Indus., 137 Wash.App. 592, 604, 154 P.3d 287 (2007). Thus, we review a sentencing court's imposition of community custody conditions for an abuse of discretion. In contrast, a party challenging a community custody condition on the grounds that a provision not affecting a First Amendment right is unconstitutionally vague must carry the burden of proving the provision unconstitutional beyond a reasonable doubt.
¶ 49 We note that this holding does not implicate our decision in State v. Zimmer, 146 Wash.App. 405, 190 P.3d 121 (2008). In Zimmer, we reviewed two distinct legal issues related to the identical community custody condition at issue here: (1) whether the drug paraphernalia prohibition is unconstitutionally vague and (2) whether the trial court should not have prohibited the defendant from possessing a cellular phone. 146 Wash. App. at 412, 190 P.3d 121.
¶ 50 As in Motter, in Zimmer we held that the challenge to the community custody drug paraphernalia prohibition was not ripe for review. 146 Wash.App. at 415, 190 P.3d 121. But we addressed whether the cellular phone prohibition was crime-related and held that the trial court's ruling prohibiting possessing cellular phones and electronic data storage devices was not directly related to Zimmer's crimes.[6]Zimmer, 146 Wash. App. at 412-14, 190 P.3d 121.
¶ 51 Here, we review whether a community custody prohibition is crime-related for abuse of discretion. Zimmer, 146 Wash.App. at 413, 190 P.3d 121. And we review the record for substantial evidence supporting the trial court's finding that a community custody prohibition is crime-related. Zimmer, 146 Wash.App. at 413, 190 P.3d 121 (citing Motter, 139 Wash.App. at 801, 162 P.3d 1190).
¶ 52 In Zimmer, we held that there was not substantial supporting evidence for the trial court's finding that the cellular phone and data storage device prohibitions were crime-related, stating:
After carefully reviewing the record, we find (1) no evidence in the record that the officers found any cellular phones or data storage devices in [the defendant's] possession at the time of her arrests; (2) no evidence in the record that [the defendant] used a cellular phone or data storage device to facilitate her [drug] possession; and (3) no finding by the trial court that the cellular phone and data storage device prohibition was related to her crimes.
146 Wash.App. at 413, 190 P.3d 121.
¶ 53 In Zimmer, we also acknowledged that defendants may employ cellular phones or data storage devices to further illegal drug possession, particularly if they intend to distribute or to sell the drug and, therefore, the prohibition against using cellular phones "might be imposed given the appropriate factual circumstances." 146 Wash.App. at 414 n. 6, 190 P.3d 121.
¶ 54 Those factual circumstances are present here. First, unlike the simple possession charge in Zimmer, a jury convicted Sanchez *1077 and Sanchez Valencia of possession of a controlled substance with intent to deliver and conspiracy to commit possession of a controlled substance with intent to deliver. Second, the State's evidence established that Sanchez and Sanchez Valencia were participants in a sophisticated and extensive drug distribution ring. In addition to the large amounts of marijuana and packaging materials found at the residence, officers also discovered a cache of prepaid cellular phones and walkie-talkies. The significance of this evidence was made clear when Detective Acee testified about the use of these devices in drug distribution organizations, stating:
In my experience, [prepaid cellular phones and walkie-talkies] are used as a communication  a secure communication device between people. I have seen, in  in terms of drug trafficking, where the person's driving the load vehicle, or the vehicle that's loaded with narcotics, can call ahead and check in with scouts that are put out on the road ahead of time to look for police roadblocks or police canine units, or just police cruisers in general; and they're also used to communicate to the driver of the load vehicle that it is safe, now, to come into the safe house and unload.
2 RP at 195.
¶ 55 Because substantial evidence supports the jury's verdict finding the appellants guilty of possession of marijuana with intent to deliver and conspiracy to possess marijuana with intent to deliver, we affirm Sanchez and Sanchez Valencia's convictions. And because the cellular phone and electronic storage device prohibition is clearly crime-related under these factual circumstances and the vagueness challenge is not ripe for review, the sentencing court did not abuse its discretion in prohibiting Sanchez and Sanchez Valencia from possessing them when they are placed on community custody on completion of their standard range prison terms. We affirm.
I concur: HUNT, J.
VAN DEREN, C.J. (concurring and dissenting in part).
¶ 56 I concur in the result affirming the convictions but respectfully dissent on the issue of whether convicted defendants must show actual harm before a challenge to a community custody condition on the basis of unconstitutional vagueness is ripe for review. Majority at 1073.
¶ 57 State v. Bahl, 164 Wash.2d 739, 750-51, 193 P.3d 678 (2008), states four requirements: (1) a primarily legal issue; (2) no necessary further factual development; (3) final action; and (4) a consideration of hardship to the parties if the court does not review the condition imposed. The majority adds a fifth requirement, evidence of harm before review is granted. The majority merely repeats Motter's requirement to show harm before review will be granted, State v. Motter, 139 Wash.App. 797, 803-04, 162 P.3d 1190 (2007), essentially transforming the need for further factual development under Bahl to ripeness dependent on harm shown.
¶ 58 Harm will arise in the context of a hearing on violation of the community custody conditions, with sanctions imposed, i.e., revocation of community custody or additional time to be served. The majority suggests that following a finding of violation of the condition, a defendant may file a personal restraint petition for relief from unreasonable application or interpretation of the challenged community custody conditions. Majority at 1073.
¶ 59 The majority ignores the hardship arising from arrest, hearing, confinement, and the delay inherent in personal restraint petitions and creates a necessity for further factual development via imposition of sanctions for violating community custody conditions that may, indeed, be unwarranted or unconstitutionally vague. This result shifts all of the hardship to the defendant, when addressing the imposition of particular community custody conditions on direct appeal imposes virtually no hardship on the State.
¶ 60 The better result is to deal with challenges to community custody conditions on direct appeal rather than assuming that they are warranted and pass constitutional muster until a defendant may later be sanctioned inappropriately for using a cell phone or other innocuous device without evidence of associated criminal activity. I would suggest *1078 that RCW 69.50.102 and RCW 69.50.4121(1) provide definitions of "drug paraphernalia" that would help alleviate the vagueness issue, as they list items considered such paraphernalia and address how to consider whether an item is properly considered to be drug paraphernalia given a factual context. Because statutes are presumed constitutional, if the trial court were to refer to these statutes as its definition of the items prohibited while on community custody, defendants' vagueness challenge may well not be ripe or warranted.
NOTES
[1] In his testimony, Detective Acee describes "counter-surveillance" techniques as "certain maneuvers that a person can implement to avoid the officers that are following them." 1 Report of Proceedings (RP) at 131.
[2] A "shake net" is a "tightly-woven net ... used to separate ... the quality of ... marijuana[] from ... the loose stem and seeds." 2 RP at 188.
[3] Originally, the court added the enhancement to the standard range of six months for the conviction of possession of marijuana with intent to deliver. But, according to RCW 9.94A.533(6), all enhancements must run consecutively to the longest sentence being imposed at the same time. The standard range sentence imposed for the conviction of conspiracy to possess marijuana with intent to deliver was 12 months; thus, the court amended the sentences to add the 24-month enhancement to the 12-month standard range sentence for a total sentence of 36 months.
[4] In his statement of additional grounds for review (SAG), Sanchez Valencia argues that (1) he was not seen at the house other than the day he was working on the mailbox, (2) on the day he left the house he was not stopped and searched to see if he was carrying marijuana, (3) there were no photographs of him leaving the house with a black garbage bag, and (4) he was just in the wrong place at the wrong time. These claims fall within the sufficiency of the evidence challenge that we address here. Additionally, in his SAG, Sanchez Valencia appears to argue that officers improperly detained him. To the extent that Sanchez Valencia is arguing that he was subject to an illegal detention, there is nothing in the record to support this argument.
[5] The community custody provisions at issue in Bahl state:

Do not possess or access pornographic materials, as directed by the supervising Community Corrections Officer. Do not frequent establishments whose primary business pertains to sexually explicit or erotic material.
Do not possess or control sexual stimulus material for your particular deviancy as defined by the supervising Community Corrections Officer and therapist except as provided for therapeutic purposes.
164 Wash.2d at 743, 193 P.3d 678.
[6] Although not a constitutional challenge, we may address a crime relationship sentencing challenge raised for the first time on appeal. State v. Julian, 102 Wash.App. 296, 304, 9 P.3d 851 (2000) ("A sentence imposed without statutory authority can be addressed for the first time on appeal, and this court has both the power and the duty to grant relief when necessary.") (citing State v. Paine, 69 Wash.App. 873, 883-84, 850 P.2d 1369, review denied, 122 Wash.2d 1024, 866 P.2d 39 (1993)), review denied, 143 Wash.2d 1003, 20 P.3d 944 (2001).