# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON, ) No. 74356-2-I
)
Respondent, )
) DIVISION ONE
v. )
) UNPUBLISHED OPINION
MARTIN AMAYA-ONTIVEROS, )
)
Appellant. ) FILED: July 31, 2017
_____ )

MANN, J. — Martin Amaya-Ontiveros appeals his conviction on two counts of third degree child rape and two counts of third degree child molestation. Amaya-Ontiveros argues that his right to be free from double jeopardy was violated, that the court abused its discretion in imposing several community custody conditions, and that the court erred in requiring Amaya-Ontiveros to obtain a court order before ending his duty to register as a sex offender. We affirm Amaya-Ontiveros's conviction but remand for corrections to his judgment and sentence.

## FACTS

In 2013, A.A.E., a 14-year-old boy, lived with his parents in a two-bedroom apartment. In late 2013, A.A.E.'s father rented the apartment's second bedroom to an

acquaintance, Martin Amaya-Ontiveros. A.A.E began sleeping in his parents' bedroom and Amaya-Ontiveros slept in the second bedroom.

A.A.E.'s parents worked long hours. Amaya-Ontiveros also worked during the day, but kept a different schedule than A.A.E.'s parents, including one day off per week. Amaya-Ontiveros and A.A.E. were often alone in the apartment. For the first few months after Amaya-Ontiveros moved into the apartment, he had little interaction with A.A.E.

In October 2014, A.A.E., then fifteen, was lying on the sofa watching movies, in running shorts. Amaya-Ontiveros sat down next to A.A.E., moved A.A.E.'s bare legs over his lap, and began touching them. Amaya-Ontiveros then slid his hand up A.A.E.'s shorts and began touching A.A.E.'s penis. The touching continued, until apparently satisfied, Amaya-Ontiveros got up and went to his room, acting like nothing had happened. A.A.E. did not tell his parents because "I was like, basically, feeling like I had no control to say anything, and I couldn't really think clearly, and it was just like a confusion in my head."

Between October and December 2014, Amaya-Ontiveros sexually abused A.A.E. multiple times. Amaya-Ontiveros twice pulled A.A.E. into the apartment's hallway, knelt, touched A.A.E.'s body, and sucked on A.A.E.'s penis. Not long after, A.A.E. was in the kitchen one day and Amaya-Ontiveros came in, sat A.A.E. on the counter, draped A.A.E.'s legs over his shoulders, and fondled A.A.E.'s penis. During another event, Amaya-Ontiveros's pulled A.A.E. into his bedroom and bent A.A.E. over with his stomach on the bed and Amaya-Ontiveros rubbed his bare stomach against A.A.E.'s bare back. A.A.E. could feel Amaya-Ontiveros had an erection. Then Amaya-Ontiveros

rolled A.A.E. over onto his back and sucked his penis. This happened three or four times. On two occasions, Amaya-Ontiveros also took A.A.E. into the hallway, masturbated himself until he ejaculated onto A.A.E.'s penis. Amaya-Ontiveros did this same activity once in the bedroom. The last time Amaya-Ontiveros touched A.A.E. was in Amaya-Ontiveros's bedroom. Amaya-Ontiveros placed A.A.E. on the bed, placed A.A.E.'s legs over his shoulders, pinned A.A.E.'s arms down, and after rubbing his penis on—but not penetrating—A.A.E.'s anus, Amaya-Ontiveros ejaculated on A.A.E.'s stomach.

In early December 2014, one of A.A.E.'s teachers contacted the school counselor because she was concerned that A.A.E.'s behavior had changed. She reported that A.A.E. appeared depressed and was no longer cooperating or collaborating in the class. The counselor met with A.A.E. and he told her he had been molested. After consulting with the school's head counselor, they contacted Child Protective Services and A.A.E.'s parents. Amaya-Ontiveros was arrested shortly thereafter.

The State originally charged Amaya-Ontiveros with one count of third degree child molestation. Before trial, the information was amended to charge Amaya-Ontiveros with two counts of third degree child molestation (counts 1 and 2) and two counts of third degree child rape (counts 3 and 4). The State alleged that all four acts occurred in the same charging period, between October 1 and November 6, 2014. After a four-day trial, the jury convicted Amaya-Ontiveros on all four counts. Amaya-Ontiveros was sentenced to four concurrent terms of 60 months. This appeal followed.

ANALYSIS

*Double Jeopardy*

Amaya-Ontiveros first contends that, based on the manner in which the jury was instructed, the convictions for two counts of child rape and two counts of child molestation violated his right to be free from double jeopardy.

The constitutional guarantee against double jeopardy protects a defendant against multiple punishments for the same offense. United States Const. amend. V; Wash. Const. art. I, § 9; State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011); State v. Land, 172 Wn. App. 593, 598, 295 P.3d 782 (2013). "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" State v. Peña Fuentes, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). A double jeopardy claim may be raised for the first time on appeal. Mutch, 171 Wn.2d at 661. This court's review is de novo. Mutch, 171 Wn.2d at 662. We consider claims of insufficient instructions "in light of the full record" to determine if a double jeopardy error occurred. Mutch, 171 Wn.2d at 664.

The jury was provided separate to-convict instructions for each of the four counts against Amaya-Ontiveros. In the to-convict instruction for child molestation under counts 1 and 2, the jury was instructed that it needed to find an act of child molestation separate and distinct from another act of child molestation under the other count. In the to-convict instruction for child rape under counts 3 and 4, the jury was instructed that it needed to find an act of child rape separate and distinct from another act of child rape under the other count. Amaya-Ontiveros argues that because child molestation and

-4-

child rape are the same offense, the failure to instruct the jury that it needed to find acts of child molestation separate and distinct from acts of child rape exposed him to multiple punishments for a single offense. We disagree.

## A.    Potential for Double Jeopardy

The starting point for our analysis is to determine whether the two offenses are legally and factually the same. "Two offenses are not the same when 'there is an element in each offense which is not included in the other, and proof of one offense would not necessarily prove the other.'" Land, 172 Wn. App. at 599 (quoting State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

Third degree child molestation requires proof of "sexual contact" with a child. RCW 9A.44.089(1). "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Third degree child rape requires proof of "sexual intercourse" with a child. RCW 9A.44.079(1). "Sexual intercourse" can be proved by penetration or by "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(1)(c); see Land, 172 Wn. App. at 601.

We examined whether child molestation and child rape are the same in Land. We explained that in a situation where the only evidence of sexual intercourse supporting a count of child rape is evidence of penetration then child rape is not the same as child molestation. But where, as here, there is no evidence of penetration then child rape and child molestation are the same. We explained that:

> where the only evidence of sexual intercourse supporting a count of child rape is evidence of sexual contact involving one person's sex organs and the mouth or anus of the other person, that single act of sexual intercourse, if done for sexual gratification, is both the offense of molestation and the offense of rape. In such a case, the two offenses are not separately punishable. They are the same in fact and in law because all the elements of the rape as proved are included in molestation, and the evidence required to support the conviction for molestation also necessarily proves the rape.

Land, 172 Wn. App. at 600.

Here, as with Land, there is a potential for double jeopardy because there was no instruction that an act of molestation had to be separate and distinct from an act of rape. Although the jury was instructed that "[a] separate crime is charged in each count" and that it "must decide each count separately," this instruction does not guard against a double jeopardy violation. Mutch, 171 Wn.2d at 662-63 (citing State v. Borsheim, 140 Wn. App. 357, 367, 165 P.3d 417 (2007) (affirming that the separate-crime instruction does not guard against double jeopardy because it fails to inform the jury that each crime requires proof of a different act)). Because the flawed instructions created a potential double jeopardy violation, we must determine whether Amaya-Ontiveros's right to be free from double jeopardy was actually violated.

B.    Manifestly Apparent

When reviewing allegations of double jeopardy we review the entire record to establish what was before the court. Mutch, 171 Wn.2d at 664. We consider the evidence, arguments, and instructions to determine if it was "'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act." Mutch, 171 Wn.2d at 664 (alteration in original) (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529

(2008)); Peña Fuentes, 179 Wn.2d at 824. This "review is rigorous and is among the strictest." Mutch, 171 Wn.2d at 664. If it was not manifestly apparent to the jury that the State was not trying to impose multiple punishments for the same offense and that each count was based on a separate act, then the defendant's potentially redundant convictions must be vacated. Mutch, 171 Wn.2d at 664. The remedy for a double jeopardy violation is to vacate the lesser offense. State v. Albarran, 187 Wn.2d 15, 21-22, 383 P.3d 1037 (2016).

1.    Trial Testimony

The trial testimony does not support Amaya-Ontiveros's position. A.A.E. testified that there were four separate instances of abuse that did not involve any oral-genital contact or any other type of sexual intercourse. For example, A.A.E. testified that Amaya-Ontiveros fondled A.A.E.'s penis without oral contact once on the couch, in the kitchen, in the hallway, and on the bed. This testimony supports only the molestation counts, not the rape counts. A.A.E. also testified to multiple events of oral-genital contact. Amaya-Ontiveros sucked A.A.E.'s penis at least three times: once in the hallway and twice in Amaya-Ontiveros's room. This testimony supports the rape counts.

2.    Closing Argument

It may be manifestly apparent that the State is not seeking to impose multiple punishments for the same act if the prosecutor's closing argument clearly distinguished between rape and child molestation and the separate and distinct acts that fit each crime. For example, in Peña Fuentes, the jury convicted the defendant of one count of first degree rape of a child and two counts of first degree molestation. As here, the

instructions did not include an instruction that the child rape must have occurred on an occasion separate and distinct from the child molestation charges. Peña Fuentes, 179 Wn.2d at 823. The court focused on the State's closing:

> In the prosecutor's closing argument, he addressed count I (child rape) and identified the two specific acts that occurred at the condo that supported a child rape conviction. The prosecutor then addressed counts III and IV, which involved child molestation that occurred during the same time period as count I. The prosecutor clearly used "rape" and "child molestation" to describe separate and distinct acts. He divided Peña Fuentes's behaviors into two categories—the acts involving penetration, which constituted rape, and the other inappropriate acts, which constituted molestation. And again, the defendant did not challenge the number of acts or whether the acts overlapped; he challenged only J.B.'s believability. The jury ultimately believed J.B.'s testimony regarding the various acts that occurred at the condo.

179 Wn.2d at 825-26 (citations omitted).

Here, the prosecutor's closing argument also clearly distinguished individual acts of child molestation and child rape. She first distinguished the molestation counts: "And for purposes of Count I and Count II, what we're talking about is the defendant's fondling of [A.A.E.]'s penis, we're talking about the defendant masturbating and ejaculating on [A.A.E.]" The prosecutor then distinguished the rape counts: "Sexual intercourse means any act of sexual contact involving the mouth of one and the sexual organs of another, for purposes of Counts III and IV, what we're talking about here is the defendant performing oral sex on [A.A.E.]" The prosecutor then recounted how A.A.E. testified about nine acts of touching and oral sex. Immediately after this, the prosecutor discussed the jury instructions in relation to the evidence:

> The charging dates that you have for all four counts are October 1st through November 6th of 2014. The instruction number 12 and number 17 tells you that you need not decide beyond a reasonable doubt on every single incident that [A.A.E.] described for you. You need not decide on a particular date that each of those incidents happened. You must simply

agree that two separate and distinct acts of child molestation in the third degree happened within that charging period, and, similarly, you must agree that two separate and distinct acts of rape of a child in the third degree happened within those charging periods.

I have some suggestions for you on how you can become clear about that as you read that instruction. [A.A.E.] described for you the first time this happened. You could decide beyond a reasonable doubt that that incident is one for which you want to rest your verdict on, Count I or II [child molestation].

[A.A.E.] gave you a detailed account of the defendant molesting him in the kitchen. You could describe beyond a reasonable doubt that that incident is one upon which you want to rest your verdict.

He described for you the defendant ejaculating on him in the hallway. You could decide beyond a reasonable doubt that that is an incident upon which you want to rest your verdict for Counts I and II.

With respect to Counts III or IV [child rape], again, [A.A.E.] described these happening on many different times, but he described to you the first time in the hallway. He described for you it happening in his bedroom, on his bed. You could describe beyond a reasonable doubt that either one of those incidents is one upon which you want to rest your verdict, on Counts III or IV.

The prosecutor's argument was clear and organized; it made clear for the jury that each count of rape or molestation needed to be based on a separate and distinct act. The argument delineated between the type of conduct that supported the child molestation counts and gave examples. The argument did the same for the child rape counts.

3.    Instructions

Finally, the jury instructions also do not support Amaya-Ontiveros's argument. There were four separate to-convict instructions, one for each count of molestation and rape. Instructions 7 and 11, the to-convict instructions for child molestation, informed the jury that to convict Amaya-Ontiveros of third degree child molestation it had to find that he had "sexual contact" with A.A.E. during the charging period "on an occasion

-9-

separate and distinct" from the other molestation count. Instructions 14 and 16, the to-convict instructions for child rape, informed the jury that in order to convict Amaya-Ontiveros of third degree child rape it had to find that he had "sexual intercourse" with A.A.E. during the charging period "on an occasion separate and distinct" from the other rape count.

We conclude, based on the evidence, argument, and instructions that it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense. Mutch, 171 Wn.2d at 664. Amaya-Ontiveros's right to be free from double jeopardy was not violated. Accordingly, we affirm his conviction.

*Community Custody Conditions*

Amaya-Ontiveros next contends that the trial court erred by imposing certain community custody conditions. We address each challenge in turn.

A.      Sex Related Businesses and Explicit Materials

Amaya-Ontiveros argues first that two of the community custody conditions imposed by the sentencing court exceed the court's statutory authority because the conditions are not crime-related. We disagree.

The sentencing court imposed various community custody conditions related to sex offenses. At issue are the conditions prohibiting Amaya-Ontiveros from entering "sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material," and requiring Amaya-Ontiveros to "not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit

-10-

conduct as defined by RCW 6.68A.011(4) unless given prior approval by your sexual deviancy provider."

We review the imposition of crime-related community custody conditions for an abuse of discretion. State v. Sanchez Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). A sentencing court abuses its discretion if its decision is manifestly unreasonable or if exercised on untenable grounds or for untenable reasons. State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). We review the factual bases for crime-related conditions for substantial evidence. State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

Pursuant to RCW 9.94A.505(9) and RCW 9.94A.703(3)(f), a sentencing court may impose crime-related prohibitions while a defendant is in community custody. A "'crime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "Directly related" includes conditions that are "reasonably related" to the crime. Irwin, 191 Wn. App. at 656.

Because Amaya-Ontiveros was convicted of sex offenses (child molestation and child rape), conditions limiting his access to sexually explicit materials and sex-related businesses are crime-related. See, e.g., State v. Magana, 197 Wn. App. 189, 201, 389 P.3d 654 (2016) (holding that the community custody conditions prohibiting an offender who was convicted of child rape from accessing X-rated movies, adult book stores, and sexually explicit materials was crime-related). There was no abuse of discretion.

B.    Dating Relationships

Amaya-Ontiveros next argues that the community custody condition requiring him to "Inform the supervising [community custody officer] and sexual deviancy treatment provider of any dating relationship" is unconstitutionally vague. We disagree.

The due process guarantee requires that laws not be vague. U.S. Const. amend XIV, § 1; Wash. Const. art. I, § 3. "The laws must (1) provide ordinary people fair warning of proscribed conduct and (2) have standards that are definite enough to 'protect against arbitrary enforcement.'" Irwin, 191 Wn. App. at 652-53 (internal quotation marks omitted) (quoting State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008)). "'[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" Sanchez Valencia, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009)). If "persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990).

Amaya-Ontiveros contends that this condition is vague because the words "dating relationship" can be arbitrarily enforced and fail to give him adequate notice of what he cannot do. He relies on United States v. Reeves, 591 F.3d 77 (2d Cir. 2010). The court in Reeves concluded that a condition requiring an offender to notify his probation officer when "he establishes a significant romantic relationship" was insufficiently clear. 591 F.3d at 80-81.

-12-

Amaya-Ontiveros's reliance on Reeves is misplaced. The condition imposed in Reeves required the defendant to report "significant romantic relationships." 591 F.3d at 81. The court concluded that the qualifiers "significant" and "romantic" were too vague to inform the defendant of the type of relationship he was to report because there were no objective criteria with which to tether the terms. Reeves, 591 F.3d at 81.

But here, a "dating relationship" is readily distinguishable from the condition challenged in Reeves. A "date" is defined as "an appointment between two persons . . . for the mutual enjoyment of some form of social activity," "an occasional (as an evening) of social activity arranged in advance between two persons. . . ." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 576 (2002). The phrase "dating relationship" is also defined by statute in the context of domestic relations: "a social relationship of a romantic nature." RCW 26.50.010(2).

"Terms must be considered in the context in which used." Bahl, 164 Wn.2d at 759. Moreover, "'impossible standards of specificity' are not required since language always involves some degree of vagueness." Bahl, 164 Wn.2d at 759 (quoting State v. Halstien, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). When the challenged terms are considered together, and in light of their dictionary and statutory definitions, the condition is sufficiently clear. The condition is not constitutionally vague.

C.   Curfew

Amaya-Ontiveros next argues that the community custody condition that prohibits him from staying out between 10:00 p.m. and 5:00 a.m. without his supervisor's permission is not crime-related. The State concedes that this condition is unrelated to

Amaya-Ontiveros's crime. We accept the State's concession. On remand, this condition should be stricken.

D.    Use or Consumption of Alcohol

Amaya-Ontiveros finally argues that the sentencing court abused its discretion in imposing a community custody condition prohibiting the "use or consum[ption] of alcohol." We disagree.

Amaya-Ontiveros concedes that, pursuant to RCW 9.94A.703(3)(e), the sentencing court has the discretion to prohibit a defender from "possessing or consuming alcohol" whether or not the possession or consumption is crime-related. Amaya-Ontiveros takes issue with the sentencing court's prohibition on the "use" of alcohol arguing that there are uses for alcohol other than consumption, including sterilizing cuts, killing garden snails, and removing food's odor from wooden cutting boards. Although Amaya-Ontiveros is technically correct that the statute does not use the word "use" it is a distinction without a difference. It is undisputed that the sentencing court had authority to prohibit "possession" of alcohol. A person cannot "use" alcohol if that person cannot possess it. There was no abuse of discretion.

*Judgment and Sentence*

Amaya-Ontiveros challenges two additional errors within the judgment and sentence. Amaya-Ontiveros first contends the sentencing court erred by imposing a requirement within the sex offender registration requirements stating that Amaya-Ontiveros's duty to register as a sex offender does not end until he obtains a "court order specifically relieving [him]" or he has been "informed in writing by the sheriff's office." The State concedes that this is incorrect. We agree.

-14-

Third degree child rape and third degree child molestation are both class C felonies. RCW 9A.44.079(2); RCW 9A.44.089(2). A person convicted of a class C felony is required to register for the ten year period following the release from confinement. RCW 9A.44.140. The duty to register ends after ten years—there is no requirement that the offender obtain a court order. On remand, the sentencing court should correct this error.

Second, the judgment and sentence contains a scrivener's error. Under the findings section, count 1 states that the crime is "Child Molestation in the Third Degree—Domestic Violence." The State concedes that labeling child molestation as a domestic violence crime is a scrivener's error. We agree.

### Statement of Additional Grounds

Amaya-Ontiveros filed a pro se statement of additional grounds in which he alleges errors relating to a plea deal, a ruling on the victim's immigration status, and his counsel's trial tactics. The issues raised are vague and devoid of argument. An appellate court will not consider a statement of additional grounds if it does not "inform the court of the nature and occurrence of the alleged errors." RAP 10.10(c). The court will also not consider allegations that rest on matters outside of the record. RAP 10.10(c).

We decline to consider Amaya-Ontiveros's statement of additional grounds. His allegation that there was an error in his plea deal rests on matters outside the record. The only evidence of a plea deal in this record is a pretrial colloquy in which Amaya-Ontiveros's defense counsel acknowledges the deal and pleads not guilty. Similarly, vague allegations relating to a ruling prohibiting the prosecutor from raising the victim's

immigration status and defense counsel's trial tactics do not adequately inform us of the error's nature and occurrence.

## CONCLUSION

Amaya-Ontiveros's conviction is affirmed. The judgment and sentence is remanded, however, for the trial court to: (1) strike the community custody condition imposing a curfew between 10:00 p.m. and 5:00 a.m., (2) modify sex offender notice of registration requirements to clarify that the duty to register expires ten years after release from confinement, and (3) correct the scrivener's error and correct count 1 by removing the domestic violence clause from child molestation in the third degree.

_Mann, J._

WE CONCUR: