123 P.3d 896 (2005)
STATE of Washington, Respondent,
v.
Mark E. SMITH, Appellant.
No. 54175-7-I.
Court of Appeals of Washington, Division 1.
December 5, 2005.
*897 Greg Link, Washington Appellate Project, Seattle, WA, for Appellant.
Amy Holt, King County Prosecutor's Office, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 Appellant Mark Smith, convicted of sex offenses in 1992, was on community placement in 2004. The Department of Corrections obtained a court order sanctioning him for possessing the film, "The Blue Lagoon". We conclude the rule upon which the sanction was based was not unconstitutionally *898 vague. Smith contends the latitude given to the Department of Corrections to define possession of this movie as a violation of his conditions of community placement amounts to an unlawful delegation of the court's sentencing authority. We decline to review this argument because it is raised for the first time on appeal and Smith has not shown a manifest constitutional error.

FACTS
¶ 2 Smith pled guilty to two counts of third degree child molestation for molesting two of his stepdaughters, beginning when they were seven and five years old. His sentence, entered on January 22, 1993, included a 2-year term of community placement. One of the conditions of community placement ordered by the sentencing judge was that Smith comply "with all crime related prohibitions."[1]
¶ 3 Smith began community placement under the supervision of the Department of Corrections. The Department cited Smith for violating his conditions of community placement by possessing a DVD of the film "The Blue Lagoon". Smith denied that he violated the condition. The superior court held a hearing in April 2004, at which the State was required to prove the violation by a preponderance of the evidence, pursuant to RCW 9.94A.634(3)(c). A deputy prosecutor presented the testimony of Patricia Turner, Smith's Community Corrections Officer. There was no other testimony or evidence presented.
¶ 4 Turner testified that she and Smith had spoken about the use of sexually stimulating material involving children, but that Smith "just continues to use it."[2] Sometime in March, 2004, Turner learned that Smith possessed a DVD copy of the film, The Blue Lagoon. Turner viewed the film and described it for the court as a portrayal of a sexual relationship between two child cousins:
They are stranded on an island. And they develop throughout the movie, and there [are] several scenes where the children are naked from pre-teen up until teen. At one point they have a simulation of sex, and the female becomes pregnant.[[3]]
Turner testified that the film also depicts a seven to eight year old female swimming in the ocean naked.
¶ 5 Turner testified that Smith, before beginning community placement, had been instructed not to "purchase, own, possess or [peruse] any pornography, catalogs or material which can be read or viewed for sexual gratification" and which "involved children".[4] Turner said she asked Smith why he would possess such a movie as The Blue Lagoon, when he knew it would increase his likelihood of reoffending. She said Smith responded that the Department "can't ask him to stop right away," and that "he needs some time to kind of work through that."[5]
¶ 6 At Turner's request, Smith took a polygraph test concerning his possession of the movie. The examiner decided to terminate the examination when it appeared that Smith was using breathing techniques to manipulate the results. One of the questions to which Smith tried to manipulate his answer was: "Since you acquired the movie `The Blue Lagoon,' have you fondled or masturbated your penis during the viewing and depiction of children in it?"[6]
¶ 7 Turner said she did not personally find the movie offensive, but the Department's concern was that Smith was "masturbating once again to children."[7] The Department believed this behavior was part of Smith's "cycle," i.e., viewing erotic material involving children would make him more likely to reoffend.
¶ 8 After Turner testified, Smith argued in opposition to the violation. Chiefly, he argued that the Department was impermissibly going beyond regulating his behavior to regulating *899 his sexual fantasies. In response, the prosecutor did not insist that The Blue Lagoon was pornography, but maintained that the violation should be sustained because it was "material that he's been warned not to possess."[8] The trial court agreed that it was legitimate to restrict Smith's possession of materials that would stimulate his sexual interest in children:
You can possess all the thoughts you want to have about what your sexual fantasies are. That can't be stopped by this Court or anybody else. But when you go to the next step and start getting outside stimulus to help enhance that, when that specifically has been prohibited, then that's when you cross the boundary.[[9]]
The court found Smith had violated a condition of community placement, and sentenced him to the time he had already served in custody: 27 days.
¶ 9 Although Smith's community placement term expired on July 28, 2005, it is not clear that the issue is moot, and we will assume it is not.
¶ 10 Smith contends he was not afforded due process because he was punished for violating a rule that was unconstitutionally vague.
¶ 11 The due process vagueness doctrine serves two important purposes: "first, to provide citizens with fair warning of what conduct they must avoid; and second, to protect them from arbitrary, ad hoc, or discriminatory law enforcement." State v. Halstien, 122 Wash.2d 109, 117, 857 P.2d 270 (1993). Under the due process clause, a prohibition is void for vagueness if either (1) it does not define the offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited, or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990). However, a statute or condition is presumed to be constitutional unless the party challenging it proves that it is unconstitutional beyond a reasonable doubt. Haley v. Medical Disciplinary Board, 117 Wash.2d 720, 739, 818 P.2d 1062 (1991). In addition, due process does not require impossible standards of specificity or mathematical certainty. Some degree of vagueness is inherent in the use of our language. State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998).
¶ 12 A rule can be facially vague or vague as applied. When a challenged prohibition does not involve First Amendment rights, it must be evaluated as applied. Douglass, 115 Wash.2d at 182, 795 P.2d 693. The relevant conduct is the actual conduct of the party challenging the ordinance, not hypothetical situations at the periphery of the rule's scope. Douglass, 115 Wash.2d at 182-83, 795 P.2d 693.
¶ 13 In Halstien, our Supreme Court held the term "sexual motivation" to be sufficiently definite in the context of a statute allowing a jury finding of sexual motivation to be an aggravating factor in sentencing. The statute in question defines the term as "for the purpose of his or her sexual gratification". RCW 13.40.020(26). The court rejected a vagueness challenge, noting that courts have had no difficulty applying the term "sexual gratification". Halstien, 122 Wash.2d at 119-120, 857 P.2d 270. The prohibition at issue here  not to possess material which can be used "for sexual gratification" and which involves children  is at least as specific as the statutory prohibition at issue in Halstien.
¶ 14 Smith relies on this court's recent decision in State v. Sansone, 127 Wash. App. 630, 111 P.3d 1251 (2005). In Sansone, one of the offender's terms of community placement directed him not to possess "pornographic materials" without prior approval by a sexual deviancy treatment specialist or by his community corrections officer. In this context, the term "pornography" was determined to be unconstitutionally vague. The prohibition in this case is not comparable because it is considerably more specific. An ordinary person would know, without having to consult a treatment specialist or a community corrections officer, that the restriction *900 on Smith's conduct prohibits possession of The Blue Lagoon.
¶ 15 Smith's primary issue below with the restriction was that it reached too far by attempting to control his thoughts, not just his actions. But the vagueness doctrine is not concerned with overreach; it is concerned with arbitrary enforcement resulting from uncertainty in terms. That a prohibition may be unreasonable in its scope does not mean that its terms are so uncertain an ordinary person cannot understand it.
¶ 16 In short, Smith has not shown that the prohibition is unconstitutionally vague.
¶ 17 Smith also contends the Department's restriction of the materials he is allowed to possess or view is an unlawful delegation of powers. Sentencing courts must look to the statute in effect at the time the offender committed the current crime when determining the offender's sentence. State v. Varga, 151 Wash.2d 179, 191, 86 P.3d 139 (2004). The version of the Sentencing Reform Act in effect at the time Smith committed his crimes authorized the sentencing court to order, as a sentence condition, that the offender comply with any crime-related prohibitions. Former RCW 9.94A.120(8)(c)(v) (1992). Smith argues the sentencing court improperly delegated its duty to define crime-related prohibitions.
¶ 18 This argument was not presented below. If it had been, the trial court would have been able to develop a record adequate for review. On the present record it is not clear whether or not the specific prohibition was in writing; who generated it, and when; and what involvement the court had, if any. The brevity of the record leaves a great deal to the imagination.
¶ 19 The failure to raise an issue in the trial court precludes review on appeal unless the trial court committed a manifest error affecting a constitutional right. RAP 2.5(a)(3). Smith fails to demonstrate that such an error occurred.
¶ 20 It is not clear that the delegation of authority  assuming it occurred and assuming it was erroneous  affected a right that is constitutional in its provenance. The Sentencing Reform Act presently authorizes the Department of Corrections to impose conditions unilaterally in certain situations, "based upon the risk to community safety." RCW 9.94A.715(2)(b). The fact that this relatively new authority for the Department is statutory suggests that if the court erred in sanctioning Smith, the error violated a statutory right rather than a constitutional right.
¶ 21 Sansone cites federal authority for the proposition that allowing a community corrections officer to define pornography is a wholesale abdication of judicial responsibility. Sansone, 127 Wash.App. at 642, 111 P.3d 1251 (citing United States v. Loy, 237 F.3d 251, 266 (3rd Cir.2001)). Sansone does not say the judicial responsibility being abdicated by such delegation is constitutional in nature.
¶ 22 Smith, in attempting to portray the alleged error as one of constitutional magnitude, cites United States v. Melendez-Santana, 353 F.3d 93, 101 (1st Cir.2003) ("separation of powers forbids courts from delegating their Article III responsibilities"; district court erred by allowing probation officer to decide whether defendant must participate in a drug treatment program and how many drug tests he would be required to undergo). However, the First Circuit recently overruled Melendez-Santana to the extent that it permits review and correction of this type of alleged error when there was no objection below. "Our rationale is straightforward: the error in question is simply not of such magnitude or consequence that it would undermine faith in the judicial system were it to stand uncorrected." United States v. Padilla, 415 F.3d 211, 221 (2005) (en banc). The court concluded Padilla could not show a reasonable probability that he would have received a more favorable sentence absent the delegation. Padilla, 415 F.3d at 221. We similarly conclude that any improper delegation of judicial authority that may have occurred did not amount to a manifest constitutional error warranting appellate review despite the lack of objection below.
¶ 23 Affirmed.
WE CONCUR: APPELWICK, A.C.J., and COLEMAN, J.
NOTES
[1] Clerk's Papers at 26.
[2] Report of Proceedings at 5.
[3] Report of Proceedings at 4.
[4] Report of Proceedings at 10.
[5] Report of Proceedings at 5.
[6] Report of Proceedings at 6.
[7] Report of Proceedings at 9.
[8] Report of Proceedings at 12.
[9] Report of Proceedings at 16.