[No. 36423-9-II.   Division Two.   August 19, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. AMY SUZANNE ZIMMER, *Appellant*.

*John A. Hays*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *John Peterson* and *Kimberly R. Farr, Deputies*, for respondent.

¶1 HUNT, J. — Amy S. Zimmer appeals two jury convictions and sentences for methamphetamine possession. She argues that the trial court erred when it (1) denied her suppression motion, (2) denied her motion to sever the counts, and (3) imposed certain community custody conditions. We reverse the community custody condition prohibiting possession of a cellular phone and a handheld electronic scheduling/data storage device. We affirm Zimmer's convictions and community custody condition prohibiting drug paraphernalia possession.

## FACTS

### I. METHAMPHETAMINE POSSESSION

#### A. First Arrest and Search

¶2 On May 7, 2005, Camas City Police Officer Douglas Slyter was on patrol when he saw a Toyota pickup truck parked in a no-parking zone at the closed gate of the Lacamas Park entrance. Slyter contacted two people under the pickup truck, which appeared disabled, and asked them if they needed help. Amy Zimmer replied that she was having mechanical problems with her truck, but she did not need

assistance. Slyter told Zimmer that she could not leave the vehicle in front of the park gate and asked Zimmer and Justin Taggert for their names, which they both provided.[1]

¶3 Slyter returned to his patrol car, ran both names for warrants, and discovered that Taggert had a felony warrant from Hood River County, Oregon. By this time, Zimmer and Taggert had gotten into the pickup truck, with Zimmer driving, and were backing out of the park entrance's driveway. Slyter signaled Zimmer to stop the truck; Zimmer complied. Slyter asked Zimmer for identification, and Zimmer showed Slyter her driver's license.[2]

¶4 Slyter walked around the pickup truck to the passenger side and spoke with Taggert about whether he had been in Hood River County. Another officer arrived on scene and took over Taggert's arrest from Slyter. Slyter walked around to the driver's side of the pickup truck and told Zimmer that he was going to search the truck. Zimmer declared that Slyter could not search her truck. Slyter explained to Zimmer that he had a right to search her truck and told her that if she did not get out of the truck, he could arrest her for obstructing justice. When Slyter initially tried to remove Zimmer from the truck, Zimmer refused and held on to the steering wheel.

¶5 When Zimmer continued to refuse to get out of the truck, Slyter and the other officer physically removed her and arrested her for obstructing justice. The officers gave Zimmer her *Miranda*[3] warnings. When Slyter searched the pickup truck's passenger compartment, he found a purse that contained (1) two plastic bags, each containing methamphetamine; (2) syringes; and (3) Zimmer's bank card.

---

[1] Officer Slyter did not recognize either Zimmer or Taggert when he approached them, but he recognized Taggert's name from Taggert's prior criminal contacts with the Camas City Police Department.

[2] At the pretrial suppression hearing, Slyter testified that he did not remember whether he gave Zimmer her driver's license back or whether he kept it while he arrested Taggert. The trial court did not make a finding of fact about whether Slyter kept Zimmer's driver's license after requesting to see identification.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Zimmer admitted that the methamphetamine Slyter found in her purse was hers and that she had been smoking it.

## B. Second Arrest and Search

¶6 On August 29, 2006, Camas City Detective Scott Boyles was on patrol when he observed a truck with a female occupant. Boyles ran the truck's license plate number for its vehicle registration and discovered that the vehicle was registered to Zimmer. The police department listed Zimmer as a person the police had probable cause to arrest, so Boyles turned on his vehicle's lights and signaled Zimmer to pull over. Zimmer used her driver's license to identify herself.

¶7 Telling Zimmer "that there was probable cause for arrest on a previous case and that she was under arrest,"[4] Boyles arrested Zimmer and read her the *Miranda* rights. Boyles then searched the passenger compartment of her pickup truck and found (1) two plastic bags, each containing methamphetamine; (2) four small amounts of marijuana; (3) "a couple of pipes"; and (4) a "bong." Zimmer told Boyles that she owned all of the items he had found in her truck.

## II. Procedure

¶8 The State charged Zimmer with two counts of methamphetamine possession, alleging that count I occurred on May 7, 2005, and count II occurred on August 29, 2006.

## A. Pretrial Motions

¶9 Zimmer moved to suppress all the evidence seized from her vehicle on May 7, 2005, arguing that Slyter had

---

[4] The record provides no further information about why the Camas City Police Department believed it had probable cause to arrest Zimmer. Neither at trial, nor on appeal, does Zimmer challenge the probable cause for her second arrest.

illegally seized her. The trial court denied Zimmer's motion to suppress. The trial court denied Zimmer's motion to sever her two counts of methamphetamine possession.

## B. Trial

¶10 At trial, Officer Slyter and Detective Boyle testified about Zimmer's arrests, the truck searches, finding methamphetamine in Zimmer's truck, and her statements that the methamphetamine was hers. Kathryn Dunn, a forensic scientist, testified that the substances seized from Zimmer's truck tested positive for methamphetamine.

¶11 Zimmer testified in her own defense that she did not know the methamphetamine was in her truck and that none of the methamphetamine was hers. The jury found Zimmer guilty as charged.

## C. Sentencing

¶12 The trial court imposed a standard range sentence of 12 months' confinement, followed by 9 months of community custody. Along with other community custody conditions, the trial court ordered:

> Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, cellular phones, police scanners, and hand held electronic scheduling and data storage devices.

Clerk's Papers at 180.

¶13 Zimmer appeals.

## ANALYSIS

### COMMUNITY CUSTODY CONDITIONS

¶14 Zimmer argues that the community custody condition prohibiting her from possessing drug paraphernalia is

unconstitutionally vague. She also challenges the condition prohibiting her from possessing a cellular phone and hand-held electronic data devices. The State counters that Zimmer's challenge to the community custody condition is not ripe for review and the condition is not unconstitutionally vague. We agree with the State that the overall drug paraphernalia prohibition is not ripe for review. Nevertheless, we hold that both the cellular phone and handheld electronic scheduling and data storage device prohibitions are crime-related prohibitions that the record does not support.

## A. Issue Conflation

¶15 In Zimmer's brief and during oral argument on appeal, Zimmer's counsel conflated two distinct legal issues: Counsel argued that (1) the trial court should not have prohibited Zimmer from possessing a cellular phone and (2) the drug paraphernalia prohibition is unconstitutionally vague. Zimmer conflated these two distinct legal arguments under one general assignment of error to her community custody provision and one general community custody section of her brief.

¶16 Whether the trial court could prohibit Zimmer from possessing a cellular phone is a challenge to whether the prohibition is crime-related, as required by statute. *See State v. Julian*, 102 Wn. App. 296, 304-05, 9 P.3d 851 (2000), *review denied*, 143 Wn.2d 1003 (2001). In contrast, whether the drug paraphernalia prohibition is vague and overly broad is a constitutional challenge. *See State v. Smith*, 130 Wn. App. 721, 726-27, 123 P.3d 896 (2005), *review denied*, 157 Wn.2d 1026 (2006). Distinguishing these two separate legal issues, with two separate legal grounds, we examine each in turn.

## B. Crime-Related Prohibitions

¶17 Only the legislature may establish potential legal punishments. *State v. Pillatos*, 159 Wn.2d 459, 469,

150 P.3d 1130 (2007). Under RCW 9.94A.700(5)(e), the legislature has authorized the trial court to impose crime-related prohibitions. "A 'crime-related prohibition' is an order prohibiting conduct that *directly relates to the circumstances of the crime.*" *State v. Autrey*, 136 Wn. App. 460, 466, 150 P.3d 580 (2006) (emphasis added).

¶18 We review whether a community custody prohibition is crime-related for abuse of discretion. *Id.* at 466-67 (citing *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). We review the trial court's finding that the community custody prohibition is crime-related for substantial supporting evidence. *State v. Motter*, 139 Wn. App. 797, 801, 162 P.3d 1190 (2007), *review denied*, 163 Wn.2d 1025 (2008).

¶19 Although the trial court's prohibition on "conduct . . . during community custody must be directly related to the crime, it need not be causally related to the crime." *State v. Letourneau*, 100 Wn. App. 424, 432, 997 P.2d 436 (2000). Because Zimmer possessed methamphetamine and drug paraphernalia, including syringes, pipes, and a bong, the trial court's prohibition on drug paraphernalia possession during community custody is directly related to her methamphetamine possession crimes.[5]

¶20 But the trial court's absolute prohibition of cellular phone and electronic data storage device possession does not directly relate to Zimmer's crimes. After carefully reviewing the record, we find (1) no evidence in the record that the officers found any cellular phones or data storage devices in Zimmer's possession at the time of her arrests, (2) no evidence in the record that Zimmer used a cellular phone or data storage device to facilitate her methamphetamine possession, and (3) no finding by the trial court that the cellular phone and data storage device prohibition was related to her crimes.

---

[5] Forbidding a defendant from possessing drug paraphernalia, where the conviction was related to drugs or substance abuse, "is a 'crime-related prohibition[ ]' authorized under RCW 9.94A.700(5)(e)." *Motter*, 139 Wn. App. at 804 (alteration in original).

¶21 We acknowledge that defendants may employ cellular phones or data storage devices to further their illegal drug possession, particularly if they intend to distribute or to sell the drug. *See State v. Campos*, 100 Wn. App. 218, 224, 998 P.2d 893 (citing *People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E. 2d 1020, 212 Ill. Dec. 675 (1995) (possession of police scanners, beepers, or cellular phones along with large amounts of a controlled substance are factors that indicate intent to deliver)), *review denied*, 142 Wn.2d 1006 (2000). We also note that cellular phones and data storage devices have become commonplace. *See Motter*, 139 Wn. App. at 806-07 (Van Deren, J., concurring in part and dissenting in part) (noting that, at that time, about 75 percent of Americans owned or used cellular phones).

¶22 But there is no evidence in the record that Zimmer possessed or used a cellular phone or data storage device in connection with possessing methamphetamine and no evidence that she intended to distribute or sell methamphetamine using such devices. Thus, on the record before us, the trial court's prohibition of these items is not crime-related. Accordingly, we hold that the trial court abused its discretion when it prohibited Zimmer from possessing a cellular phone and handheld electronic data storage devices as conditions of community custody.[6]

## C. Vagueness Challenge

¶23 We next turn to Zimmer's vagueness challenge to her community custody condition prohibiting drug paraphernalia possession. Although Zimmer does not specify what type of challenge she is raising on appeal, courts have clearly established that there are two types of due process vagueness challenges to community custody conditions. *See State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993); *Smith*, 130 Wn. App. at 726-27. A defendant may challenge a community custody prohibition for being

---

[6] In so holding, we suggest that these prohibitions might be imposed given the appropriate factual circumstances.

facially vague or vague as applied. *Smith*, 130 Wn. App. at 727.

¶24 When a community custody prohibition challenge "does not involve First Amendment rights, it must be evaluated as applied." *Id.* (citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990)). Such is the case here.

## 1. Ripeness

¶25 But we cannot now evaluate Zimmer's community custody drug paraphernalia prohibition because the Department of Corrections (DOC) has yet to apply it. We refuse to look at hypothetical situations on the periphery of a community custody condition. "The unconstitutionality of a community custody condition is not ripe for review unless the person is harmfully affected by the part of the condition alleged to be unconstitutional." *Autrey*, 136 Wn. App. at 470-71. Because Zimmer has "not been harmed by this potential for error[,] . . . this issue therefore is not ripe for our review." *Motter*, 139 Wn. App. at 804.[7] Similarly, we hold here that Zimmer's challenge to the drug paraphernalia prohibition is not ripe for review.

## 2. Current community custody violation procedure

¶26 Nonetheless, Zimmer argues that we should review her community custody challenge, despite its lack of ripeness, because courts cannot review DOC community custody violation sanctions. Zimmer misconstrues the sanction procedure, and her argument fails.

¶27 Zimmer cites Washington Administrative Code (WAC) 137-104-050 and WAC 137-104-080 to argue that the DOC

---

[7] All three divisions of the Washington Court of Appeals have held that courts will not review a constitutional community custody provision challenge unless the provision harmfully affected the defendant. *Motter*, 139 Wn. App. at 804 (Division Two); *Autrey*, 136 Wn. App. at 470-71 (Division Three); *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996) (Division One).

handles community custody sanctions completely internally. But, taken in context of RCW 9.94A.634, these WACs do not support Zimmer's argument. On the contrary, Washington courts routinely review DOC-imposed community custody sanctions. *See Smith*, 130 Wn. App. at 724-28 (court reviewing community custody provision after DOC sanctioned defendant). Rather than limiting a defendant's rights, this WAC gives a defendant further procedural rights[8] before the trial court hearing to which the statute entitles the defendant.

¶28 Under RCW 9.94A.634, there are two routes a defendant can choose when the DOC alleges a community custody violation: First, the defendant may participate in a DOC hearing and decide whether to stipulate to an agreement with the DOC about the violation and sanctions, if any. RCW 9.94A.634(3)(a); WAC 137-104-060. Once the parties enter into a stipulated agreement, the DOC must, "[w]ithin seventy-two hours of signing the stipulated agreement," submit a report to the trial court and the prosecuting attorney outlining the violation and proposed sanctions. RCW 9.94A.634(3)(a)(ii). The trial court reviews the DOC's report and proposed sanctions. If it is not satisfied with the agreement or sanctions, the court may then schedule a hearing, modify the sanctions, and allow the defendant to withdraw from the stipulated agreement. *Id.*

¶29 Second, the defendant may refuse to stipulate to the alleged community custody violation and the DOC's proposed sanction. RCW 9.94A.634(3)(b). Under WAC 137-104-050, the defendant is entitled to a DOC hearing on the alleged violation and proposed sanction, regardless of whether the defendant wants to stipulate to them. After this DOC hearing, in the absence of a stipulated agreement between the parties, the trial court conducts a hearing at which the defendant must show cause why he or she should

---

[8] In addition, under WAC 137-104-060, a defendant has the right at the DOC hearing to testify or to remain silent, to call witnesses, to cross-examine witnesses, and to have an audio recording copy of the hearing. But WAC 137-104-060 does not strip a defendant of his or her right to have a court review DOC sanctions.

not be punished for noncompliance. RCW 9.94A.634(3)(b). The defendant may then appeal the trial court's ruling to the Washington appellate courts.

¶30 Thus, regardless of what route the defendant chooses, Washington courts review the DOC's proposed sanctions for a defendant's community custody violations. Because we may later review the DOC's enforcement of community custody conditions, we decline to speculate about hypothetical situations where the DOC may only potentially apply the paraphernalia possession prohibition too broadly. Accordingly, we hold that Zimmer's constitutional community custody challenge to the paraphernalia possession prohibition is not ripe for review.

¶31 We affirm the paraphernalia possession prohibition, but we reverse the community custody cellular phone and handheld electronic scheduling and data storage device prohibition.

¶32 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

VAN DEREN, C.J., and PENOYAR, J., concur.

Review denied at 165 Wn.2d 1035 (2009).