FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 24

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43113-1-II |
| Respondent, | |
| v. | |
| MAXPHIL DAVID LAUE, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J — Maxphil David Laue appeals his jury trial conviction for first degree child rape and several of his community custody conditions. He argues that we should reverse his conviction because the trial court erred in excluding the victim's well-child checkup form. He also argues that the trial court exceeded its sentencing authority in imposing the following community custody conditions: (1) polygraph testing; (2) prohibiting possession of pornography or access to pornography as defined by his community custody officer (CCO); and (3) obtaining permission from his CCO before owning or accessing a computer, the internet, or a cell phone. We affirm Laue's conviction and his polygraph community custody conditions. Accepting the State's concession that the pornography community custody provision is improper under *State v. Bahl*,[1] we remand to the trial court either to strike the pornography community custody provision or to impose a constitutionally adequate and specific pornography condition. We also remand to

---

[1] *State v. Bahl*, 164 Wn.2d 739, 758, 193 P.3d 678 (2008).

No. 43113-1-II

the trial court either to strike the computer, internet, and cell phone community custody provisions or to impose more narrowly tailored conditions necessary for the CCO's implementation of any constitutional pornography community condition that the trial court might reimpose.

FACTS

I. CHILD RAPE

From March through June 2005, Maxphil David Laue's[2] girlfriend Kimberly Johnson babysat five-year-old KG-C[3] and KG-C's two-year-old brother at Johnson's home, in the downstairs suite of KG-C's step-grandmother's home.[4] KG-C claimed that "[al]most every time" she was in Johnson's care," Johnson would take a nap and that while Johnson was sleeping, Laue would show KG-C "videos of people doing what you do to make a baby" and then "lick" her vagina and direct her to lick his penis. 2 Verbatim Report of Proceedings (VRP) at 121, 122.

KG-C did not report these incidents to anyone until she told her mother about them in August 2009, after having watched a television show in which the celebrity guest had disclosed having been raped by her brother. KG-C then told her father and a school counselor. At the

---

[2] Laue was 42 years old at this time.

[3] It is appropriate to provide some confidentiality in this case. Accordingly initials will be used in to identify the juveniles involved.

[4] Johnson stopped babysitting because she became ill; she died about six months later.

counselor's request, KG-C's mother eventually contacted the police[5]; the counselor called Child Protective Services (CPS).

## II. PROCEDURE

The State charged Laue with two counts of first degree child rape, having occurred between September 22, 2004, and September 21, 2006. During the first trial, the trial court dismissed the second count for lack of evidence, and declared a mistrial on the first count when the jury could not reach a verdict. The State retried Laue on the remaining charge.

### A. Well-Child Exam Form

Before the second trial, the State objected to admission of KG-C's June 2005 well-child exam form, arguing that it was not relevant. The State also advised the trial court that the nurse practitioner who had conducted the exam and filled out the form was deceased and, therefore, unavailable to testify about any conversations she had with KG-C during the exam or the nature of the information she (the nurse) had gathered from KG-C.

Laue argued that he intended to call the examining nurse's supervisor as the record custodian to testify about "how they do well-child exams, what the procedure is, and what all of the notations on this document mean." 1 VRP at 32. Laue emphasized that it was "particularly relevant to this case that, according to [the nurse practitioner], she did a genital exam, and it appeared normal." 1 VRP at 34. Laue also stated that the form noted that they had discussed "[s]afety," and Laue wanted to question the supervisor about whether that discussion would have

---

[5] KG-C's mother did not immediately report the incidents to the police because she believed the statute of limitations had run and there was nothing the police could do.

included a discussion of "good touch, bad touch." 1 VRP at 34. Laue wanted to establish that if there had been any indication of problems with KG-C during the exam, the nurse practitioner would have referred KG-C to the prosecutor's office or a hospital sexual assault unit and that she would have called CPS.

The State responded that other evidence would establish that (1) KG-C had not reported any sexual assault until her 2009 disclosures; (2) there had been no allegation of penile/vaginal penetration; (3) there was nothing in the well-child exam form suggesting that the nurse practitioner had asked KG-C about good/bad touch or any potential sexual assault; (4) there was no way of knowing exactly what had taken place during this exam; and (5) therefore, the well-child exam report was irrelevant. Laue replied that KG-C's failure to mention anything during the exam of her "vagina" was relevant, 1 VRP at 37, and that the examining nurse's supervisor could testify to the standard procedure for well-child exams; Laue asked the trial court to admit the well-child exam report under the business record exception to the hearsay rule, ER 803. The trial court ruled that the document was not relevant and refused to admit it.[6]

## B. Retrial

The State's witness testified as described above. The State also presented a recording of a telephone call Laue had made from jail in which he had stated, "'Some sh*t's come back from

---

[6] More specifically, the trial court noted that the original author was deceased and unavailable and that the supervisor would not know what happened during the examination and "could only speak to general protocol but would not have any first-hand experience as to whether or not that protocol was followed on that particular date." 1 VRP at 45. The trial court also concluded that "[g]iven the allegations of the sex acts," a "normal" finding for the genital examination was not relevant to whether or not the sexual contact occurred. 1 VRP at 46.

years ago haunting me now.'" 2 VRP at 262. Johnson's daughter was the only defense witness. She testified that she had been at her mother's home frequently during the relevant time period, that she did not recall her mother sleeping while caring for KG-C and her brother, and that KG-C "loved" Laue and never appeared to be afraid of him. 2 VRP at 253. The jury found Laue guilty of first degree child rape.

### C. Sentencing

Before sentencing, Laue objected to several community custody conditions recommended in the presentencing investigation report: (1) that he submit to "polygraph examinations to monitor compliance with crime-related prohibitions and law-abiding behavior,"[7] which he argued was no longer allowed under *In re Detention of Hawkins*, 169 Wn.2d 796, 238 P.3d 1175 (2010); (2) cell phone, computer, and internet possession and access restrictions, which he argued were not crime related; and (3) pornography or sexually explicit materials prohibitions, which he argued were unlawful under *Bahl*.

Rejecting Laue's arguments, the trial court imposed the following community custody condition in the 2012 judgment and sentence: "Possess/access no pornography, sexually explicit materials, and/or information pertaining to minors via computer (i.e. internet)." CP at 103. The trial court also imposed the following conditions in Appendix H to the judgment and sentence:

14. Shall submit to random urinalysis testing and polygraph examinations to monitor compliance with crime-related prohibitions and law-abiding behavior.
15. Shall have prior approval from his CCO prior to owning or accessing a computer or the internet.
16. Shall not possess/access pornography or sexually explicit materials as defined by the CCO.

---

[7] CP at 67.

. . .

27. Shall have approval from his CCO prior to owning or accessing cell phone and/or a computer or the internet.

CP at 111. Laue appeals his conviction and the above community custody conditions.

## ANALYSIS

### I. EXCLUSION OF MEDICAL RECORD

Laue first argues that the trial court erred in excluding the victim's well-child exam medical record and, therefore, that we should reverse his conviction. We disagree.

The decision to admit or to exclude evidence lies within the sound discretion of the trial court. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). We review the trial court's admission of evidence for an abuse of discretion. *Neal*, 144 Wn.2d at 609. A trial court abuses its discretion when its decision "'is manifestly unreasonable or based upon untenable grounds or reasons.'" *Neal*, 144 Wn.2d at 609 (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998)). We find no abuse of discretion here.

The trial court ruled irrelevant the medical report showing that the victim's genital examination was normal because the nature of the contact charged against Laue would not have resulted in an abnormal genital examination. The record supports the trial court's ruling. The sexual contact alleged was oral contact between Laue's penis and the victim's mouth; there was no allegation of vaginal penetration by Laue's penis and no evidence suggesting that his "lick[ing]" her would have produced any observable physical evidence in or on the victim's body. 2 VRP at 120. Moreover, because there was no alleged penile penetration inside the vagina, there was neither likelihood nor reason for the victim's genital examination to have revealed any evidence relevant to the charged oral rape.

6

Laue also argued that the victim's medical report would show that KG-C did not report any abuse during the examination. But such evidence would have been merely cumulative. There was already substantial testimony that KG-C did not report the abuse to *anyone* until she disclosed it to her mother several years after the incident and the well-child examination. And Laue made no offer of proof to show that (1) the nurse practitioner had talked to KG-C about any possible abuse during the examination, (2) such questioning is standard procedure during a well-child examination, or (3) the nurse practitioner regularly followed such a prescribed protocol if one existed. Accordingly, we hold that the trial court did not abuse its discretion when it refused to admit KG-C's well-child visit medical record.

## II. COMMUNITY CUSTODY CONDITIONS

Laue next challenges several of his community custody conditions: (1) polygraph testing; (2) prohibiting possession of pornography or access to pornography as defined by his CCO; and (3) obtaining permission from his CCO before owning or accessing a computer, the internet, or a cell phone. Accepting the State's concession of error that the pornography related conditions are unconstitutionally vague and holding that the computer, internet, and cell phone condition is overbroad as written, we remand to the trial court for vacation or constitutionally clear reimposition of those conditions. We affirm the remaining challenged conditions.

### A. Standard of Review

We review de novo whether the trial court had statutory authority to impose specific community custody conditions. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If a challenged condition is statutorily authorized, we review imposition of crime-related prohibitions for abuse of discretion. *Armendariz*, 160 Wn.2d at 110. Conditions that do not

reasonably relate to the circumstances of the crime, to the risk of reoffense, or to public safety are unlawful unless explicitly permitted by statute. *See State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003). "Although the trial court's prohibition on 'conduct . . . during community custody must be directly related to the crime, it need not be causally related to the crime.'" *State v. Zimmer*, 146 Wn. App. 405, 413, 190 P.3d 121 (2008) (alteration in original) (quoting *State v. Letourneau*, 100 Wn. App. 424, 432, 997 P.2d 436 (2000)), *review denied*, 165 Wn.2d 1035 (2009).

## B. Polygraph Testing

Laue argues that the trial court lacked statutory authority and thus unlawfully ordered him to submit to polygraph testing during his term of community custody. He is incorrect.

Our Supreme Court expressly ruled to the contrary in *State v. Riles*, 135 Wn.2d 326, 342, 957 P.2d 655 (1998), *overruled in part on other grounds by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010):

> A trial court has authority to impose monitoring conditions such as polygraph testing. Although the results of polygraph tests are generally not admissible in a trial, this Court has acknowledged their validity as an investigative tool.

And, contrary to Laue's argument, our Supreme Court did not overrule *Riles* in *Hawkins*. *Hawkins* did not address *Riles* or a community custody polygraph condition such as the one at issue here. Instead, it addressed whether former RCW 71.09.040(4) (2009) authorized the State to compel respondents in sexually violent predator commitment proceedings to submit to polygraph tests as part of their pretrial evaluations. *Hawkins*, 169 Wn.2d at 800-01. Here, however, the State was not alleging that Laue is a sexually violent predator; nor was it

8

attempting to obtain evidence to prove such an allegation. Thus, Laue's assertion that *Hawkins* effectively overturned *Riles* fails and *Riles* remains good law.

We hold that the trial court had lawful authority to condition Laue's community custody on compliance with periodic polygraph testing. Thus, Laue's challenge to this condition fails.

### C. Pornography Conditions

Laue assigns error to "the community custody condition[s] prohibiting the possession of pornography" in the body of the judgment and sentence and in appendix H. Br. of Appellant at 1. *See* CP at 103; 111 (condition 16). Relying on *Bahl*, 164 Wn.2d at 758, Laue argues that these community custody conditions restricting access to or possession of pornography as defined by the CCO is unconstitutionally vague because their reliance on the CCO to define "pornography" "does not provide ascertainable standards for enforcement." Br. of Appellant at 16-17. The State concedes that these conditions are unconstitutionally vague under *Bahl*. We accept the State's concession and remand for resentencing, during which the trial court should either strike these conditions and/or impose conditions that are constitutionally adequate and specific. *See State v. Sansone*, 127 Wn. App. 630, 643, 111 P.3d 1251 (2005).

### D. Computers, Cell Phones, Internet Condition

Laue next argues that the trial court "exceeded its authority" by requiring prior CCO approval for computer, cell phone, and internet access because use of these electronic instruments was not crime related.[8] Br. of Appellant at 1. We agree with Laue that there is no evidence in the record that he used a computer, the internet, or a cell phone to perpetuate the

---

[8] *See State v. O'Cain*, 144 Wn. App. 772, 184 P.3d 1262 (2008).

crime for which he was convicted or that he possessed any such items at the time of his arrest. We note, however, that there is evidence that he showed his victim pornographic videos before he engaged her in sexual contact in 2005. And we take judicial notice that access to pornography is now readily available by computer and cell phone internet.

Nevertheless, the trial court's requiring CCO approval before Laue's access to or use of the internet, computer, and cell phones for all purposes is constitutionally overbroad in that it also restricts lawful use of these devices. Consequently, we cannot say that this overbroad condition is crime-related. *See State v. Bahl*, 137 Wn. App. 709, 714-15, 159 P.3d 416 (2007), *reversed in part on other grounds*, 164 Wn.2d 739, 193 P.3d 678 (2008) (a community custody condition is overbroad if the condition encompasses matters that are not crime related.). Thus, we also strike this condition.[9]

We affirm Laue's conviction and the challenged polygraph community custody condition (number 14). We remand to the trial court (1) to strike community custody provisions relating to pornography (on page five of the judgment and sentence and condition number 16 in appendix H) and to internet, computer, and cell phone access (numbers 15 and 27); or (2) to impose

---

[9] If on remand, however, the trial court reimposes a constitutionally clear pornography prohibition, it should also be able to consider reimposition of some form of internet, computer, and cell phone conditions narrowly tailored to enable the CCO to monitor and to enforce such pornography prohibition.

No. 43113-1-II

constitutionally adequate, specific, and narrowly tailored pornography and internet, computer, and cell phone access conditions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Maxa, J.

11