IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79008-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOEL IXAAC MECHAM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 2, 2020 |

MANN, A.C.J. — Joel Mecham appeals three of the community custody conditions imposed by the trial court. Mecham contends the conditions are not crime-related, are unconstitutionally vague and overbroad, infringe his rights to intimate association, freedom of speech, and free exercise of his religion. We affirm in part, and reverse and remand in part to strike two conditions.

I.

Mecham entered a negotiated guilty plea to the offense of second degree child molestation and fourth degree assault with a sexual motivation. Mecham admitted to sexually touching minors in a church and at a bus stop. Mecham agreed to an exceptional sentence of 20 months and 304 days. At sentencing, Mecham contested only the community custody conditions requested by the State.

The incident involving the second degree child molestation conviction occurred on August 27, 2017. J.L. and her seven-year-old daughter, Y.L., went to a church service with their family. After the church service, the family stayed at church for a lunch event. While the lunch was being set up, J.L. and Y.L went downstairs to a playroom. Another four-year-old child and a male, later identified as Mecham, were in the playroom. J.L. and Y.L. returned upstairs for lunch.

During lunch, J.L. sat at a table with her children, her mother, Mecham's parents and Mecham's older brother. After Y.L. finished eating, she asked her mother if she could return to the playroom, J.L. agreed, and Y.L returned to the playroom alone. A few minutes later, Y.L. returned to J.L. at the lunch table and whispered that someone had picked her up from behind.

Later that evening, J.L asked Y.L who picked her up at church and Y.L. said she thought it was a son of the parents who were sitting with them at lunch. Y.L. described the man as wearing a red t-shirt; J.L. recalled that Mecham had been wearing a red t-shirt and they sat with his parents at lunch. Y.L. described the incident, explaining that Mecham had grabbed her from behind and reached down the front of her shorts, touching her private spot, "tapping it two times." Y.L. was very upset when describing the incident to her mother.

The incident involving the fourth degree assault with sexual motivation occurred on May 19, 2016. Mecham walked up to a 16-year-old girl, H.J., at a bus stop, reached over her shoulder and grabbed her breast underneath her shirt and bra. H.J. screamed and ran home and told her friend Candi. Candi and H.J. drove to the bus stop and located Mecham walking north. Candi and H.J. followed Mecham in Candi's car and

called 911. When Deputy Mark Stich arrived, Candi explained that Mecham had grabbed H.J.'s breast and pointed him out to Deputy Stich. Deputy Stich detained Mecham.

On October 26, 2017, Detective Saarinen interviewed Mecham about molesting Y.L. Mecham admitted to playing with Y.L. and another female child in the playroom. Mecham denied touching Y.L. anywhere other than her arms and shoulders. During the interview, Mecham admitted to the incident on May 19, 2016, that he tried to grab the breast of a stranger at a bus stop. Mecham said that the woman screamed and ran away, and that they were the only ones at the bus stop and it was "just too easy."

At sentencing, the trial court imposed several conditions that Mecham contests on appeal.

II.

We review community custody conditions for abuse of discretion and will reverse community custody conditions that are manifestly unreasonable. State v. Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). If imposition of the community custody condition violates the constitution it is manifestly unreasonable. Valencia, 169 Wn.2d at 791-92. We review the trial court's finding that the community custody prohibition is crime-related for substantial supporting evidence. State v. Zimmer, 146 Wn. App. 405, 413, 190 P.3d 121 (2008). We do not presume that a community custody condition is constitutional. Valencia, 169 Wn.2d at 793.

"Washington sentencing courts are required to impose certain community custody conditions in specified circumstances and may impose others." State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). The Sentencing Reform Act (SRA), ch.

-3-

9.94A RCW, sets forth the mandatory, waivable, and discretionary community conditions that courts impose during sentencing. The SRA permits the court to order an offender to: refrain from direct or indirect contact with the victim of the crime or a specified class of individuals, participate in crime-related treatment or counseling services, participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community, and comply with any crime-related prohibitions. RCW 9.94A.703(3)(b), (c), (d), (f). Crime-related prohibitions are discretionary conditions that are directly related to the circumstances of the crime but need not be causally related to the crime. RCW 9.94A.030(10); Zimmer, 146 Wn. App. at 413.

A defendant's constitutional rights during community placement are subject to the infringements authorized by the SRA. Bahl, 164 Wn.2d at 765. "More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Conditions interfering with a fundamental constitutional right "must be reasonably necessary to accomplish the essential needs of the State and public order" and "must be sensitively imposed." Warren, 165 Wn.2d at 32.

Community custody conditions may be unconstitutionally vague or overbroad when they are not crime related. The Fourteenth Amendment and article I, section 3 of the Washington Constitution require that citizens have fair warning of proscribed conduct. U.S. Const. Amend. XIV; Wash. Const. art. I, §3. A statute is unconstitutionally vague if it does not define the criminal offense with sufficient

-4-

definiteness that ordinary people can understand what conduct is proscribed, or does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Bahl, 164 Wn.2d at 752-53.

"Overbreadth analysis is intended to ensure that the legislative enactments do not prohibit constitutionally protected conduct, such as free speech." City of Seattle v. Ivan, 71 Wn. App. 145, 149, 856 P.2d 1116 (1993). When evaluating overbreadth challenges to community custody conditions, the court considers if the challenged statute reaches constitutionally protected speech or conduct, and whether it proscribes a substantial amount of that speech or conduct. State v. Knowles, 91 Wn. App. 367, 372, 957 P.2d 797 (1998).

Mecham raises several challenges to each of the following community custody conditions:

> (5) Do not possess or consume controlled substances unless you have a legally issued prescription.
>
> (16) Stay out of: parks used for youth activities, schools k-12 grades, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth activities, arcades, church services, restaurants marketed to and designed to cater to children, and any specific location identified in advance by DOC or CCO. May attend church services and restaurants if accompanied and supervised by an adult aware of the offenses and approved by the CCO.
>
> (17) Do not date women who have minor children, as directed by the supervising Community Corrections Officer. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider/Community Corrections Officer approves of such. Do not form relationships with families who have minor children except as approved by Sex. Dev. Provider.

We address each challenge in the order of these conditions.

A.

Mecham contends that condition 5 is both unconstitutionally vague and overbroad. We disagree.

Condition 5 states "Do not possess or consume controlled substances unless you have a legally issued prescription." First, Mecham contends that condition 5 does not provide him with sufficient notice because the court did not check the box in the judgment and sentence prohibiting the defendant from possessing or consuming marijuana without a valid prescription. This argument fails because the prohibition is included in Appendix 4.2 and the judgment and sentence provides that "[t]he defendant shall comply with Additional Conditions of Community Custody as set forth in Appendix 4.2."

Next, Mecham contends that the trial court's failure to define a "controlled substance" is unconstitutionally vague because its use and possession in Washington is decriminalized and therefore, a person of ordinary intelligence would not be on notice that its use is prohibited.

This court recently addressed the issue of whether a community custody condition that prohibits the association with known users and sellers of "illegal drugs" was unconstitutionally vague because it was unclear whether "illegal drugs" included marijuana. In Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 170-71, 430 P.3d 677 (2018). We held that the marijuana usage remains a federal offense under the Controlled Substances Act (CSA) and therefore, although recreational marijuana use and possession has been decriminalized in Washington, it does not excuse a person

from knowing that marijuana is still "illegal" federally. 21 U.S.C. §§ 812, 844; RCW 69.50.360. Under the CSA, a controlled substance is defined as

> a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

21 U.S.C § 802(7). Marijuana is a controlled substance under the CSA and Mecham must obey all laws, including federal law. 21 U.S.C. § 821. Therefore, the restriction that Mecham not possess or use controlled substances without a prescription is not unconstitutionally vague and clearly includes marijuana.

Mecham also contends that this condition is overbroad because marijuana use is not prohibited by law in Washington. Since marijuana is a controlled substance under the CSA, its use is prohibited by federal law and therefore the condition is not unconstitutionally overbroad.

### B.

Mecham contends that condition 16 infringes his right to freely exercise religion. We disagree.

Condition 16 prohibits Mecham from attending church services unless he is accompanied and supervised by an adult aware of his offenses and approved by the CCO. Mecham contends that the condition is subject to strict scrutiny and the State has not used the least restrictive means for protecting children at church services.

Religious free exercise is protected under the First Amendment and the Free Exercise Clause of the Washington Constitution. U.S. Const. Amend. I; Wash. Const. art. I, §11. "Religious free exercise embraces two concepts: the freedom to believe and

the freedom to act." State v. Balzer, 91 Wn. App. 44, 52, 954 P.2d 931 (1998) (citing Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940)). "The first is absolute while the second, by the nature of our democracy cannot be." Balzer, 91 Wn. App. at 52. Community custody conditions that burden the free exercise of religion must satisfy strict scrutiny. Balzer, 91 Wn. App. at 53.

Strict scrutiny requires the defendant to prove that the government restriction has a coercive effect on the practice of religion. Balzer, 91 Wn. App. at 53. First, the defendant must demonstrate that his religious convictions are sincerely held and central to the practice of his religion. Balzer, 91 Wn. App. at 54. The State concedes that Mecham's family was very involved in church. Next, the defendant must demonstrate that the restriction unduly burdens free exercise, which is shown if its "coercive effect . . . operates against a party in the practice of his [or her] religion." Balzer, 91 Wn. App. at 54.

Mecham has not shown that he will be unduly burdened by this restriction. Mecham's crime involved abusing an unsupervised child at church. The day of the offense, Mecham was attending church with his mother, father, and older brother. Mecham has failed to show that these members of his family, who presumably know his offense, will be unable to supervise his attendance at church. Thus, from the record, Mecham will be able to continue attending church services in the same manner as before his conviction.

Further, even if the restriction unduly burdened Mecham's free exercise, the restriction satisfies strict scrutiny. Once the defendant "establishes a burden upon religious free exercise, the court determines if the burden is offset by a compelling state

interest served by the least restrictive means to achieve that interest." Balzer, 91 Wn. App. at 56. "'Compelling interests' are those government objectives based upon the necessities of national or community life such as threats to public health, peace, and welfare." Balzer, 91 Wn. App. at 56. "If the government demonstrates that it has a compelling interest in enforcing the enactment for the peace and safety of the state, that interest will justify infringement upon [the defendant's] religious free exercise." Balzer, 91 Wn. App. at 56.

The State has a compelling interest to protect families who attend church services from Mecham. Mecham committed the offense in a church. He abused a seven-year-old in the church playroom while the congregation enjoyed lunch upstairs. Mecham was not deterred from abusing Y.L. even though he had seen J.L. accompany Y.L. to the playroom. Merely prohibiting Mecham's contact with children is insufficient to accomplish the State's interest because Mecham needs supervision to prevent this type of contact.

The trial court did not abuse its discretion by prohibiting Mecham from attending church services without the supervision of an adult aware of his offense because the restriction is not unduly burdensome, serves a compelling state interest, and is narrowly tailored.

C.

Next, Mecham contends that condition 16's prohibition on visiting "restaurants marketed to and designed to cater to children" is unconstitutionally vague. We disagree.

Mecham contends that this case is like Irwin because there, the court held that "areas where minor children are known to congregate" was vague because it did not provide sufficient definiteness. State v. Irwin, 191 Wn. App. 644, 649, 364 P.3d 830 (2015). In Irwin, the court concluded that the condition "do not frequent areas where minor children and known to congregate, as defined by the supervising CCO" was vague because it did not provide sufficient notice to understand the conduct proscribed. Irwin, 191 Wn. App. at 654. The court noted that "it may be true that, once the CCO sets locations where 'children are known to congregate' for Irwin, Irwin will have sufficient notice of what conduct is proscribed," but that would leave the condition vulnerable to arbitrary enforcement. Irwin, 191 Wn. App. at 655.

Here, the trial court sought to provide Mecham with sufficient definiteness that lacked in Irwin. The list of prohibited places is extensive. At the sentencing hearing, the trial court changed the prohibition from restaurants to "restaurants marketed to and designed to cater to children." The vagueness doctrine does not require impossible precision for community custody conditions. State v. Wallmuller, 194 Wn.2d 234, 244-45, 449 P.3d 619 (2019).

Mecham expresses concerns that it is unclear whether "family friendly" restaurants, restaurants with a small play area, or that have a children's menu are included. Designed means "done, performed, or made with purpose and intent often despite an appearance of being accidental, spontaneous or natural." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 612 (2002). Design means "deliberate purposive planning." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 611 (2002). In context, the term designed limits the scope of restaurants to those that have been made specifically

-10-

for children, and not merely a family friendly restaurant. The restaurants that Mecham must avoid are those with play areas, games, or entertainment for children.

### D.

Mecham challenges condition 17 based on his right to intimate association under the Fourteenth Amendment and the Washington Constitution. U.S. Const. § XIV; Const. art. I § 3; City of Bremerton v. Widell, 146 Wn.2d 561, 575, 51 P.3d 733 (2002). Intimate human relationships are those "that attend the creation and sustenance of a family" and include, marriage, childbirth, the raising and educating of one's children, and cohabitation with one's relatives. Widell, 146 Wn.2d at 576. The United States Supreme Court "has endorsed a continuum approach, delineating where the 'objective characteristics locate [the relationship] on a spectrum from the most intimate to the most attenuated of personal attachments.'" Widell, 146 Wn.2d at 576-77 (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 620, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)).

> Determining the appropriate level of scrutiny to apply to government action alleged to infringe the right of marriage requires a two-step analysis: first, a court must ask whether the policy or action is a direct or substantial interference with the right of marriage; second, if the policy or action is a direct and substantial interference with the right of marriage, apply strict scrutiny, otherwise apply rational basis scrutiny. In this context, strict scrutiny means that the state action burdening marriage cannot be upheld "unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."

Widell, 146 Wn.2d at 579.

### 1.

Mecham contends that condition 17's prohibition, "do not date women who have minor children, as directed by the supervising Community Corrections Officer" is not

-11-

crime-related, is unconstitutionally vague, and infringes his right to intimate relationships. We disagree.

Crime-related restrictions must be directly related to the crime. Here, the crime involved minor children. Prohibiting Mecham from dating women who have minor children protects a class of victims. The SRA allows the court to order an offender to "refrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94.703(3)(b). We apply rational basis scrutiny because Mecham has not explained how this condition is "a direct or substantial interference with the right of marriage." The State's goal here is protecting women and their minor children and the condition satisfies that goal.

Mecham contends that "as directed by the supervising Community Custody Officer" renders the condition unconstitutionally vague. The condition does not fail for vagueness under Bahl. In Bahl, the court concluded that the restriction on accessing pornographic materials was unconstitutionally vague because pornography is a subjective term and that allowing the CCO to direct what falls within the condition made the vagueness problem more apparent. 164 Wn.2d at 758. In Bahl, allowing enforcement by the CCO of a subjective term could lead to arbitrary enforcement. 164 Wn.2d at 758. We do not hold the same concern here. The prohibition is clear and not subjective. Mecham is prohibited from dating women with minor children without CCO approval.

-12-

2.

Mecham contends that condition 17's requirement to "disclose sex offender status prior to any sexual contact" is an unconstitutional compulsion of speech and is not crime-related. We agree.

The right to freedom of speech necessarily includes the freedom to refrain from speech. U.S. Const. Amend. I, XIV; Const. art. I § 5; Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). "The protection from compelled speech extends to statements of fact as well as of opinion." State v. K.H.-H., 185 Wn.2d 745, 749, 374 P.3d 1141 (2016). "The compelled speech doctrine generally dictates that the State cannot force individuals to deliver messages that they do not wish to make." K.H.-H., 185 Wn.2d at 749. Under Bahl, a community custody condition that limits a fundamental right is permissible, provided it is imposed sensitively. 164 Wn.2d at 757. First Amendment rights may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. Bahl, 164 Wn.2d at 757.

The State contends that K.H.-H. is applicable because the court upheld a court-ordered apology letter as a permissible compulsion of speech. K.H.-H. was a 17-year-old male, adjudicated guilty of fourth degree sexual assault with sexual motivation of C.R., a female acquaintance from his high school. The trial court ordered K.H.-H. to "address to C.R. 'a sincere written letter of apology . . . mean[ing] an admission that he did what he was accused of what he's [sic] doing and [is] sorry he put her in that position.'" K.H.-H., 185 Wn.2d at 747. On appeal, K.H.-H. contended that the condition was an unconstitutional compulsion of speech. K.H.-H., 185 Wn.2d at 748. The court concluded that, while the letter was a compulsion of speech, it was reasonably

necessary to accomplish the goals of juvenile rehabilitation in the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW. K.H.-H., 185 Wn.2d at 747.

The purpose of the SRA is to

[M]ake the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve himself or herself;

(6) Make frugal use of the state's and local governments' resources; and

(7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.

Unlike the JJA, the goals of the SRA do not include rehabilitation. The State responds that

[r]equiring Mecham to disclose his sex offender status prior to any sexual contact is narrowly tailored and reasonably necessary to protect the public. Mecham's crimes against children demonstrated his utter inability to control his sexual urges. He explained that he assaulted H.J. at the bus[] stop because they were alone there at the time and it was "just too easy."[] Because Mecham declined to participate in his [presentence investigation interview], the report noted there was no information for the sentencing judge pertaining to the nature, severity and degree of Mecham's sexual deviancy.

The State asserts that its goal is to protect the public. The condition, however, is not sensitively imposed because there is nothing in the record supporting a risk to

-14-

consenting adults. The condition is not crime-related because Mecham's crimes were against minors and is an unconstitutional compulsion of speech.

3.

Mecham contends that condition 17's restriction on "sexual contact in a relationship . . . until the treatment provider/Community Corrections Officer approves of such" is an unconstitutional infringement on his right to intimate association and is not crime-related. We agree that it is not crime-related.

Crime-related restrictions must be directly related to the crime. Prohibiting sexual contact in a relationship until approved by the treatment provider or CCO is not crime-related because Mecham's victims were not in a relationship with him. Mecham declined to be interviewed for the presentence investigation report and the report stated that "[t]here is no available information pertaining to the possible nature, degree and severity of sexual deviancy experienced by Joel Mecham. A sexual deviancy evaluation may offer insight into any offense patterns and triggers, as well as an analysis of the possibility or likelihood of future re-offense." From this record, we cannot conclude that a prohibition on "sexual contact in a relationship" is crime-related.

4.

Mecham contends that condition 17's prohibition "do not form relationships with families who have minor children except as approved by Sex. Dev. Provider" is an unconstitutional infringement on his right to intimate association and is not crime-related. We disagree.

The right to form relationships with other families is not protected as a right to intimate association. Widell, 146 Wn.2d at 575. Under Widell, the court recognized that

-15-

"an engaged couple who is not cohabitating is not entitled to constitutional protection." 146 Wn.2d at 577. Here, the State must satisfy rational basis scrutiny to restrict Mecham from forming relationships with families who have minor children. This restriction protects minors and is crime-related because, in both incidents, Mecham's victim was a minor. Mecham's family and Y.L.'s family sat together at the church luncheon. Prohibiting Mecham from forming new relationships with families who have minor children is directly related to the nature of Mecham's crime because Mecham took advantage of these established relationships when he abused Y.L.

We affirm in part, and reverse and remand in part to the trial court to strike the prohibitions against "sexual contact in a relationship is prohibited until the treatment provider/Community Corrections Officer approves of such" and "disclose sex offender status prior to any sexual contact."

_Mann, ACJ_

WE CONCUR:

_Leach, J._                    _Appelwick, J._